[No. A042489. First Dist., Div. Two. May 9, 1990.]

NORMAN I. KRUG REAL ESTATE INVESTMENTS, INC., Plaintiff and Appellant, v. ROMAN PRASZKER et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for part I and the part entitled "Cross-appeal."

38

COUNSEL

Roberts, Helfrich & Waughtel, Michael Waughtel and John F. Klinkert for Plaintiff and Appellant.

Gordon & Rees, James M. Hanavan and Diane R. Crowley for Defendants and Appellants.

OPINION

SMITH, J.—We consider an appeal by defendants Roman Praszker and West and Praszker Realtors, Inc. (collectively Praszker), and a cross-appeal by plaintiff Norman I. Krug Real Estate Investments, Inc., arising from a judgment of the superior court in favor of Krug and against Praszker in the sum of $27,144.73. The judgment was rendered after the court found that Praszker, who listed property on which Krug held an unrecorded deed of trust, was negligent in failing to disclose the existence of Krug's security interest to a prospective buyer or to inform Krug beforehand of the impending sale.

## BACKGROUND

Krug is a California corporation operated by Norman I. Krug (hereafter both are referred to as Krug), engaged in the business of making real estate investments. In 1978 Krug and Dr. Robert A. Gilbert acquired a multiunit apartment building at 445 Webster Street, San Francisco (445 Webster). The parties agreed that they would operate the property as an equal partnership, with Dr. Gilbert assuming responsibility for managing the property.

Subsequently, Gilbert spent approximately $90,000 of his own funds on the property and requested reimbursement from Krug for half of the amount. Krug balked at the request, and the parties ultimately agreed that, rather than reimburse Gilbert, Krug would deed Gilbert his share of the property in return for a promissory note secured by a third deed of trust in the amount of $90,000. However, if Gilbert paid Krug $40,000 before February 1, 1984, the note would be considered paid in full.

At the time the agreement was signed, the parties orally agreed that Krug would forgo recording his third deed of trust in order to allow Gilbert to

refinance the property. In March of 1981, the property was refinanced and Krug received the sum of $17,919.41 toward payment of the note.

Encountering financial difficulties, Gilbert went into default on a number of properties he owned, including 445 Webster. He therefore contacted an old acquaintance, Roman Praszker, sole owner of West and Praszker Realtors, Inc., for the purpose of listing the properties for sale. He told Praszker of Krug's unrecorded deed of trust and, in substance, asked Praszker to "take care of everything," including the deed of trust. Praszker agreed. On December 14, 1981, Praszker listed the subject property for sale.

On January 6, 1982, Krug and Praszker had a telephone conversation in which Praszker informed Krug that a sale of 445 Webster to the Eftil Corporation was pending and advised him that if he intended to protect his third deed of trust he should record it. Krug said he would think about it, and Praszker gave him the name of the title company handling the transaction.

The contract of sale to the Eftil Corporation expressly disclosed the existence of Krug's third deed of trust, but the sale collapsed. One month later, however, the property was sold to the Noble Group, with Praszker acting as the realtor for both buyer and seller. At no time did Praszker inform Krug of the pending sale to the Noble Group, nor did he tell the Noble Group of the existence of Krug's unrecorded lien.

The property was sold to the Noble Group for $1 above existing recorded encumbrances, but the fair market value of the property at the time was actually far greater. Upon learning that the property had been sold, Krug filed suit against Dr. Gilbert to collect the balance on the promissory note. Gilbert declared bankruptcy on February 8, 1984, and Krug's attorneys pursued the claim in the bankruptcy court, resulting in a cash settlement of $11,000.

On March 18, 1985, Krug filed suit against Praszker. Although the case proceeded to trial on a number of theories, the court rendered judgment for Krug strictly on negligence grounds. The court found that "[w]hatever Plaintiff's motivation was previously in not recording its Third Deed of Trust, Defendants' failure to disclose and failure to inform Plaintiff of the impending sale effectively extinguished Plaintiff's security interest in the subject Property, thus proximately damaging Plaintiff and preventing Plaintiff from recording its Third Deed of Trust."

The court ruled that Krug was entitled to recover the $40,000 balance due under the note at the time of the sale to the Noble Group, plus 12

percent interest, less the $17,919.41 previously received by Krug from the refinance proceeds and the $11,000 Krug collected from the bankruptcy settlement, for a total judgment of $27,144.73. After a subsequent motion to tax costs, the trial court allowed Krug to recover $8,379 in attorney's fees and $2,012.60 in costs incurred in his pursuit of Dr. Gilbert in the state and bankruptcy courts. Praszker filed a notice of appeal from the *judgment* alone. Krug filed a cross-appeal.

APPEAL

I*

. . . . . . . . . . . . . . . . . . . .

II

*Duty of Care*

Praszker contends that under the facts found by the trial court he owed no duty of care to Krug as a matter of law, or if he had such duty it was discharged by the January 1982 conversation in which he advised Krug to record his deed of trust.

The term "duty" is only an expression of policy considerations that lead the law to say that a particular plaintiff is entitled to protection. (*De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 794 [225 Cal.Rptr. 789]; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 749-750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) The existence of a legal duty is a question of law for the court. (*Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1458 [249 Cal.Rptr. 688]; *Thompson* v. *County of Alameda, supra*, 27 Cal.3d at p. 750.)

Praszker does not dispute that he knew of Krug's unrecorded third deed of trust and of the proposed sale to the Noble Group at a price which would not cover Dr. Gilbert's indebtedness to Krug, but claims there was no duty of disclosure with respect to the Noble transaction. He urges at the outset that he had no privity of contract with Krug and therefore had no special relationship which would create a legal obligation toward him.

However, "a defendant can be liable for economic harm inflicted upon a third party with whom he has no direct dealing, provided that the

---

*See footnote, *ante*, page 35.

consideration of appropriate factors warrants the imposition of a duty to the third party." (*Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 860 [237 Cal.Rptr. 282].)

Civil Code section 2343 entitled "Agent's responsibility to third persons" provides that "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases . . . . [¶] . . . 3. *When his acts are wrongful in their nature.*" (Italics added.)

■ California cases recognize a fundamental duty on the part of a realtor to deal honestly and fairly with all parties in the sale transaction. (*Nguyen* v. *Scott* (1988) 206 Cal.App.3d 725, 735 [253 Cal.Rptr. 800]; *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, 100-101 [199 Cal.Rptr. 383, 46 A.L.R.4th 521]; *Hale* v. *Wolfsen* (1969) 276 Cal.App.2d 285, 292 [81 Cal.Rptr. 23].) "There is little question that a real estate broker owes a duty of care to third persons in the transaction, where the broker does not have privity with, or fiduciary duties to, such third person. The question is the extent of that duty that will be imposed on the broker." (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 3.27, p. 157 (Miller & Starr).) This question is answered by weighing a number of factors, including the extent the transaction was intended to affect the third party, the foreseeability of harm, the degree of certainty the third party suffered injury, the moral blame attached to the broker's conduct, and the policy of preventing future harm. (*Op. cit. supra*, at pp. 157-158; see generally *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 804 [157 Cal.Rptr. 407, 598 P.2d 60]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].)

The imposition of a duty on a realtor to disclose a known unrecorded lien interest is supported by standards already existing in the industry. The code of ethics of the National Association of Realtors[2] provides that a realtor has an obligation to treat fairly all persons to the transaction (art. 7) and to assure that all financial obligations and commitments be reduced to writing (art. 20).

The most important step in determining if a broker owes a duty of care to a third party is to examine "whether a reasonable person would have foreseen an unreasonable risk of harm to the third person and whether in view of such risk the broker exercised ordinary care under the circumstances."

---

[2] The code was received into evidence by the trial court in this case. It is also appropriate for this court to take judicial notice of it as bearing on the standard of care for professionals in the industry. (Evid. Code, § 452, subd. (h); *Easton* v. *Strassburger, supra*, 152 Cal.App.3d 90, 101, fn. 5.)

(2 Miller & Starr, *supra,* at p. 158.) ■ Here, Praszker knew that his client, Dr. Gilbert, had fallen on financial hard times and was in default on 445 Webster; he also knew that Krug held an unrecorded security interest in the property; he knew or certainly should have known that the sale to the Noble Group would not satisfy the outstanding indebtedness to Krug and that there was a significant risk that Krug's security would be destroyed if the sale went through without disclosure to the buyer or Krug. Notwithstanding this knowledge, Praszker kept both the buyer and Krug in the dark about the sale, resulting in Krug's loss of his security. Praszker had obviously earlier understood the importance of his obligation of disclosure as exemplified by his conduct with respect to the proposed sale to Eftil Corporation. However, he chose to remain silent about the subject on the second sale. ■ Both the policy of preventing future harm and considerations of moral blame compel the imposition of a duty on the part of a realtor never to allow a desire to consummate a deal or collect a commission to take precedence over his fundamental obligation of honesty, fairness and full disclosure toward all parties. " 'The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. . . . He is accredited by his calling in the minds of the inexperienced or the ignorant with a knowledge greater than their own.' " (*Easton* v. *Strassburger, supra,* 152 Cal.App.3d at p. 100, quoting *Roman* v. *Lobe* (1926) 243 N.Y. 51, 54-55 [152 N.E. 461, 50 A.L.R. 1329].) As stated in the preamble to the National Association of Realtors' code of ethics, "The term REALTOR has come to connote competency, fairness, and high integrity resulting from adherence to a lofty ideal of moral conduct in business relations. No inducement of profit . . . can justify departure from this ideal." ■ We hold that Praszker owed a duty to disclose to the Noble Group the existence of the third deed of trust or inform Krug of the impending escrow. Although expert testimony is not determinative on the subject, it is noteworthy that all three experts who testified at trial agreed, at least in principle, with this conclusion.

We do not accept Praszker's argument that he fulfilled his obligation of fairness by informing Krug in January 1982 of the proposed sale to Eftil. When the listing was originally taken, Praszker substantively promised Dr. Gilbert that he would "take care of everything" including Krug's third deed of trust. Once that sale fell through and a new escrow was opened, Praszker's duties of disclosure arose anew. As a result of his silence, the Noble Group was allowed to take the property free and clear of the Krug deed of trust, and his security interest was destroyed. Substantial evidence supports the trial court's determination that the duty was breached.

## III

### *Contributory Negligence*

In response to Praszker's request for a finding on the issue, the trial court's statement of decision declares that "[t]he facts do not support an allocation of damages between Plaintiff and Defendants under the doctrine of comparative negligence." Praszker argues that this finding is irreconcilable with the evidence and the facts as found by the court. We agree.

We recognize that the question of contributory negligence is ordinarily one for the trier of fact and becomes a question of law only if the evidence is of such a character that it will support no other legitimate inference. (*Simmons* v. *Wexler* (1979) 94 Cal.App.3d 1007, 1012 [156 Cal.Rptr. 810]; *Hiner* v. *Hubbard* (1966) 240 Cal.App.2d 63, 69 [49 Cal.Rptr. 157]; *Shoemaker* v. *State of California* (1962) 202 Cal.App.2d 379, 386 [20 Cal.Rptr. 812].) However, this is one of those rare cases where the undisputed evidence, coupled with the finding of trial court concerning the January 6 telephone conversation, permits no other legitimate conclusion.

Krug testified that he discovered in November 1981 that Dr. Gilbert had fallen behind on his payments and that a notice of default had been recorded by the second mortgage holder. He wrote several letters to Gilbert and Gilbert's attorney voicing his alarm at the situation and concern that action be taken. He received no response. Contrary to Krug's denial, the trial court made a specific finding that on January 6, 1982, Praszker told Krug of the pending sale of the property to Eftil and advised him that if he intended to protect himself he should record the deed of trust. Krug, however, did nothing.

Civil Code 1714 states the basic principle that everyone is responsible for injury to another caused by his want of ordinary care, " *'except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.'* " (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 816 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) The adoption of comparative negligence was intended to vindicate the rationale behind the statutory maxim that " 'persons are responsible for their acts to the extent their fault contributes to an injurious result.' " (*Id.,* at p. 828.)

As a result of the January conversation, Krug knew there was an escrow pending and that a sale could close at any time, posing a genuine danger that he would not be paid. Notwithstanding this knowledge, he was

wholly indifferent to the imminent danger presented to his unrecorded lien. Krug's own expert, Harry Miller, minced no words in expressing his opinion when questioned on the subject: "Q. Isn't it your opinion, Mr. Miller, that if Mr. Krug had spoken with Mr. Praszker and Mr. Praszker told Mr. Krug to record his action [sic] and Mr. Krug did not, that Mr. Krug would then have some responsibility for his failure to act? [¶] A. *Yes. In fact, with that knowledge, Mr. Krug would have to be an idiot not to react.*" (Italics added.)

Krug's complete failure to take *any* sort of action to protect his security, such as monitoring the pending sale, recontacting Praszker, or recording his deed of trust constitutes a failure to exercise ordinary care in the management of his affairs as a matter of law. Consequently, the trial court erred in failing to apportion the damages suffered by Krug to the extent by which they were proximately caused by his own negligence. The amount of such apportionment, however, is a factual issue which is best left to the trial court.

## IV

### *Attorney's Fees*

Praszker next challenges the court's award of attorney's fees to Krug incurred in prosecuting his suits against Dr. Gilbert in state and federal court, based upon the "tort of another" doctrine. (See *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645].) The order allowing such fees is not reviewable here however, because no appeal was taken from it.

There is no judgment in this case awarding Krug litigation costs as an element of his damages. Rather, attorney's fees and related costs in the Gilbert matter were included in Krug's *cost bill* and the issue of whether Krug was entitled to such sums was deferred until after judgment and litigated by way of a motion to tax costs.[3]

On May 5, 1988, the court filed an amended judgment, which awarded Krug $27,144.73 plus interest in compensatory damages. Four days later,

---

[3] The court's order recites that "the parties stipulated and the Court ordered that claim [sic] damages for attorneys fees and costs would be bifurcated and decided by the Court. Procedurally the Court stated without objection that it would reach those elements of damage by way of cost bill."

the court filed its "Order In re Motion Taxing Costs," in which it *denied* Praszker's motion to tax the claimed litigation costs. Notwithstanding the rendition of this postjudgment order, Praszker's notice of appeal expressly limits itself to the May 5 judgment. No appeal was ever taken from the May 9 order.

■ "If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review." (Eisenberg, Horvitz & Wiener, Cal. Practice Guide, Civil Appeals and Writs (Rutter 1989) § 2.13, p. 2-5, (Eisenberg), citing Code Civ. Proc. § 906 and *Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959, 967 [231 Cal.Rptr. 241], italics original.) ■ A postjudgment order which awards or denies costs or attorney's fees is separately appealable. (Eisenberg, § 2:156, p. 2-42; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 223 [226 Cal.Rptr. 265]; *Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428, 432 [159 Cal.Rptr. 473]; *Raff* v. *Raff* (1964) 61 Cal.2d 514, 519 [39 Cal.Rptr. 366, 393 P.2d 678]; Code Civ. Proc. § 904.1, subd. (b)), and if no appeal is taken from such an order, the appellate court has no jurisdiction to review it. (*Hardin* v. *Elvitsky* (1965) 232 Cal.App.2d 357, 363-364 [42 Cal.Rptr. 748].)[4]

Nor can we construe the notice of appeal as applying to the May 9 order under the rule of liberal construction. (Cal. Rules of Court, rule 1(b).) The notice, filed on May 26, 1988, states: "NOTICE IS HEREBY GIVEN that defendants ROMAN PRASZKER and WEST & PRASZKER REALTORS, INC. appeal from the judgment filed May 5, 1988, *a copy of which is attached as Exhibit 'A.'*" (Italics added.) Only a copy of the May 5 judgment was appended. Thus, despite Praszker's knowledge of the May 9 order allowing litigation costs and attorney's fees, the notice of appeal unambiguously designates only the May 5 judgment.

Praszker's citation to *Kellett* v. *Marvel* (1936) 6 Cal.2d 464 [58 P.2d 649] is not availing. In that case the notice of appeal was ambiguous—it stated that the party was appealing from an order denying a motion to resist entry of judgment, but gave a judgment book entry description which fit that of a final judgment of divorce. The court, noting the ambiguity and rule of

---

[4] We reject Praszker's facile argument that the recitation in the May 5 judgment that plaintiff be awarded judgment together with "costs and disbursements" was sufficient to encompass the subsequently awarded litigation costs. Under the court's order and stipulation of the parties, Krug did not become entitled to such costs until a cost bill was filed and the motion to tax determined in a separate proceeding. Moreover, acceptance of Praszker's position would sabotage the rule that postjudgment orders allowing or denying costs and attorneys fees must be separately appealed from, since virtually all judgments routinely provide for "costs" to the prevailing party.

liberal construction, treated the appeal as one from the divorce judgment. *Kellett* is not apposite because there is no ambiguity whatever in Praszker's notice. The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders. (9 Witkin, Cal. Procedure (3d ed. 1985), Appeal, § 372, p. 374.) "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed." (*Shiver, McGrane & Martin* v. *Littell* (1990) 217 Cal.App.3d 1041, 1045 [266 Cal.Rptr. 298].)

Praszker points out that Krug has never challenged the sufficiency of the notice of appeal and both parties have treated the issue as if it were properly before us. But subject matter jurisdiction can never be created by consent, waiver or estoppel. (2 Witkin, *op. cit. supra*, Jurisdiction, § 10, p. 374.) Thus, Krug's failure to point out the jurisdictional defect is of no consequence. (See *Hardin* v. *Elvitsky, supra*, 232 Cal.App.2d at p. 363.) Because Praszker's notice of appeal totally omits any reference to the appealable order granting litigation costs and attorney's fees, this court has no jurisdiction to review the propriety of that award.

CROSS-APPEAL*

. . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed. The cause is remanded to the trial court with directions to make new findings on the issue of comparative negligence and enter a new judgment consistent with views expressed herein. Praszker shall recover costs on appeal.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied June 4, 1990, and the opinion was modified to read as printed above.

---

* See footnote, *ante*, page 35.