[No. H009222. Sixth Dist. Jan. 7, 1993.]

DUANE FISH et al., Plaintiffs and Appellants, v.
SANTIAGO F. GUEVARA et al., Defendant and Respondents.

## COUNSEL

Barger & Wolen, Edwin A. Oster and Robert K. Renner for Plaintiffs and Appellants.

Gassett, Perry & Frank and Alan F. Hunter for Defendants and Respondents.

## OPINION

**CAPACCIOLI, J.**[*]—Judgment was entered for defendants on plaintiffs' complaint. Defendants filed a memorandum of costs and plaintiffs moved to tax those costs. Plaintiffs then filed a notice of appeal. Plaintiffs' motion to tax costs was subsequently denied and defendants were awarded expert witness fees pursuant to Code of Civil Procedure[1] section 998. Plaintiffs assert that the trial court erred when it refused to permit plaintiffs to call an undisclosed expert witness on rebuttal at trial. They also contend that the court should not have awarded expert witness fees to defendants. For the reasons expressed below, we affirm the judgment.

### FACTS

Plaintiffs own property directly across the street from defendants' property. Plaintiffs brought an action against defendants alleging that defendants' septic system was discharging waste and other harmful substances onto plaintiffs' property. Plaintiffs sought an injunction and damages. Defendants made a pretrial offer to compromise pursuant to section 998 by offering to pay plaintiffs $5,000.[2] The case was tried to the court and on October 3, 1991, judgment was entered for defendants. The judgment provided that defendants could recover from plaintiffs "all costs, expenses and disbursements allowed by law . . . ." On October 22, 1991, defendants filed a memorandum of costs in which they requested more than $25,000 in expert witness fees pursuant to section 998. Plaintiffs moved to tax costs. On December 5, 1991, plaintiffs filed a notice of appeal from the judgment. On December 18, 1991, plaintiffs' motion to tax costs was heard by the court. On December 20, 1991, plaintiffs' motion to tax costs was denied and defendants were allowed to recover their expert witness fees.

---

[*]Retired Associate Justice of the Court of Appeal, Sixth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]The written offer to compromise does not appear in the appellate record because it apparently did not appear in the superior court file. Nevertheless, the parties do not dispute that defendants made a procedurally proper offer to compromise pursuant to section 998.

## DISCUSSION

### A. *Exclusion of Expert Testimony*

The admissibility of testimony of an undisclosed expert witness is governed by section 2034. The trial court "shall" exclude expert *opinion* testimony of a witness whom the offering party has unreasonably failed to disclose. (§ 2034, subd. (j).) However, "[a] party may call as a witness at trial an expert not previously designated by that party if . . . that expert is called as a witness to impeach the testimony of an expert witness offered by any other party at the trial. This impeachment may include testimony to the falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness, but may not include testimony that contradicts the opinion." (§ 2034, subd. (m).) Hence, an undisclosed expert may testify to facts which contradict the factual basis for the opinions of other experts but may not give opinion testimony which contradicts the opinions of other experts.

Plaintiffs called Dr. Gary Driggs, an undisclosed expert witness, to testify on rebuttal, purportedly pursuant to section 2034, subdivision (m). Driggs was sworn and qualified as an expert in geology and analysis of permeability of soils. Plaintiffs proposed to have Driggs contradict the testimony given by defendants' experts that the permeability rate of the soil was an inch per year. Defendants and the court objected to the proposed testimony as being outside the narrow exception provided for by section 2034, subdivision (m).[3] The court ruled that the proposed testimony was "opinion" rather than "foundational fact" and therefore excluded it.

---

[3] The following colloquy occurred when plaintiffs' counsel began to question Driggs. "The Court: Counsel, you are offering this witness as an impeaching expert undisclosed. What is it you are seeking to impeach, who and what? [¶] Mr. Oster [plaintiffs' counsel]: I intend to impeach [defendants' experts] regarding their statements that the permeability rate for the Santa Clara formation or any subformation or subclasses of soils is an inch per year. [¶] The Court: That's not proper impeachment, counsel. [¶] Ms. Rasmussen [defendants' counsel]: Thank you for anticipating my objection, your honor." Plaintiffs argued that the permeability rate was a "fact" upon which defendants' experts based their opinion that water would not flow from defendants' property to plaintiffs' property. The court disagreed. "Counsel, the requirements to call an undisclosed expert for the purposes of offering an opinion in a case is [*sic*] fairly narrow. I'm not going to suggest to you what those things are because I don't want to invite any further discourse, but simply to call a witness to disagree with what some other witness has stated to be scientific fact is not proper impeachment, and I'm not going to allow it. [¶] It seems to me that your argument really goes to the weight of their testimony, and you're [*sic*] witness, who was imminently [*sic*] qualified testified as to his opinion. [¶] This is a matter of weight. This isn't an explanation that you can't get there from here, or the manner or method in which some scientific test or analysis was done and is not recognized in the field, or something of that kind. You're simply offering a contrary opinion." The court

■ Plaintiffs claim that the trial court erred in excluding Driggs's proposed testimony. The issue is whether Driggs's proposed testimony contradicting the testimony of defendants' experts on the permeability rate of the soil was proper impeachment testimony. We conclude that it was not. "[W]hen it comes to impeaching expert witnesses, the distinction between an opinion and a foundational fact—though arbitrary—must be made. . . . In many cases, the ultimate opinion of the expert is based on a series of underlying opinions. Thus, rather than broadly construing what a foundational 'fact' is, the term should be strictly construed by the trial court to prevent a party from offering a contrary opinion of his expert under the guise of impeachment." (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 924 [184 Cal.Rptr. 393]; see also *People* v. *Bell* (1989) 49 Cal.3d 502, 532 [262 Cal.Rptr. 1, 778 P.2d 129] citing *Kennemur* [impeachment is not general rebuttal; the purpose and permissible scope of impeachment of an expert is to call into question the *truthfulness* of the witness's testimony]; accord, *Gallo* v. *Peninsula Hospital* (1985) 164 Cal.App.3d 899, 904 [211 Cal.Rptr. 27].)

Driggs's proposed testimony did not contradict a foundational *fact* testified to by defendants' experts but instead offered a contrary *opinion* on the permeability rate of the soil. Both parties' experts agreed that the soil in the affected area was composed of a conglomerate of various kinds of soil known as Santa Clara formation. None of the experts had tested the soil to determine its permeability rate. Therefore, none of the experts had personal knowledge of the permeability rate of the soil at issue. No witness may testify to a fact of which the witness has no personal knowledge. (Evid. Code, § 702.) However, experts may give opinion testimony based on their knowledge, training and other matters reasonably relied upon by experts. (Evid. Code, § 801, subd. (b).) Defendants' experts each expressed the *opinion* that the soil had a permeability rate of approximately one inch *per year*.[4] These opinions were based on the experts' knowledge, training and review of permeability studies performed by others. Plaintiffs did not assert that Driggs had performed a permeability test on the soil that would permit him to testify on permeability as a matter of *fact*. Consequently, the proposed testimony of Driggs was merely another contradictory *opinion* on the permeability rate of the soil. The trial court properly excluded this proposed testimony.

### B. *Expert Witness Fees*

■ Plaintiffs challenge the propriety of the trial court's discretionary decision to allow defendants to recover their expert witness fees. Judgment

---

said it was "not going to allow this witness to testify as an impeaching expert since he has been undisclosed."

[4]Plaintiffs' expert testified that the soil had a permeability rate of between a half inch and an inch *per hour*.

was entered for defendants on October 3, 1991. This judgment carried with it costs. Defendants subsequently sought to recover their expert witness fees pursuant to section 998. Plaintiffs moved to tax costs. On December 5, 1991, plaintiffs filed a notice of appeal. This notice of appeal stated that plaintiffs "appeal from the judgment entered in this action on October 3, 1991." On December 18, 1991, the court held a hearing on plaintiffs' motion to tax costs at which it considered whether defendants should be allowed to recover their expert witness fees. On December 20, 1991, plaintiffs' motion to tax costs was denied and defendants were allowed to recover their expert witness fees. As the chronology of events makes clear, plaintiffs' notice of appeal was filed prior to the trial court's discretionary decision to permit defendants to recover their expert witness fees. Since the trial court's postjudgment ruling allowing defendants to recover their expert witness fees was separately appealable (§ 904.1, subd. (b)), we have no jurisdiction to review that ruling in the absence of a timely notice of appeal therefrom. (*Hennessy* v. *Superior Court* (1924) 194 Cal. 368, 372 [228 P. 862]; *Empire Co.* v. *Bonanza Co.* (1885) 67 Cal. 406, 410-411 [7 P. 810]; *Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].)

Plaintiffs did not file a notice of appeal from the trial court's December 20 ruling. However, they claim that their December 5 notice of appeal from the October 3 judgment carried with it appellate jurisdiction over the trial court's December 20 postjudgment decision because the October 3 judgment "clearly embodies the trial court's subsequent decision allowing defendants to recover their expert witness fees." Plaintiffs rely exclusively on *Grant* v. *List & Lathrop* (1992) 2 Cal.App.4th 993 [3 Cal.Rptr.2d 654]. In that case, the Fifth District Court of Appeal held that "when a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal subsumes any later order *setting the amounts* of the award." (*Grant* v. *List & Lathrop, supra,* 2 Cal.App.4th at pp. 997-998, italics added.) Plaintiffs assert that the issue herein is "identical" to the one resolved in *Grant*. We strongly disagree. *Grant* has no bearing on this case. The judgment in *Grant* awarded costs and attorney fees to the prevailing party as a matter of right. The subsequent order merely set the *amount* of those costs and fees. (*Id.* at p. 996.) Since the prevailing party's right to costs and fees was determined by the judgment, the propriety of the award was not a collateral issue but was merely incidental to the judgment. (*Id.* at p. 997.)

*Grant* held only that a costs award which is incidental to the judgment can be challenged on an appeal from the judgment. That holding does not apply herein because plaintiffs do not challenge the award of costs as a matter of right to the prevailing party. Plaintiffs challenge the discretionary award of

expert witness fees. An award of expert witness fees pursuant to section 998 is not incidental to the judgment but is instead a separately litigated issue. (*Bank of San Pedro* v. *Superior Court* (1992) 3 Cal.4th 797, 803 [12 Cal.Rptr.2d 696, 838 P.2d 218].) Prevailing parties do not recover their expert witness fees as a matter of right. When the opposing party has rejected a settlement offer and fails to obtain a more favorable judgment, the trial court may, in its discretion, make an award of expert witness fees. (§ 998.) Thus, even a losing defendant may recover its expert witness fees if the plaintiff obtains a judgment which is less favorable than defendant's rejected offer to compromise. (*Bank of San Pedro* v. *Superior Court, supra*, 3 Cal.4th at p. 803; § 998, subd. (c).) Because expert witness fees are not incidental to the judgment, the propriety of a postjudgment award of expert witness fees cannot be reviewed on an appeal from the judgment. An award of expert witness fees must be challenged by a timely notice of appeal therefrom. Plaintiffs' notice of appeal from the judgment did not create appellate jurisdiction over the trial court's subsequent award of expert witness fees. Accordingly, we are without jurisdiction to review the propriety of the trial court's award of expert witness fees to defendants.

CONCLUSION

The judgment is affirmed.

Cottle, Acting P. J., and Bamattre-Manoukian, J., concurred.