[No. H021653. Sixth Dist. Dec. 18, 2001.]

ANGELO GOUSKOS et al., Plaintiffs and Appellants, v.
APTOS VILLAGE GARAGE, INC., et al., Defendants and Respondents.

COUNSEL

Mazur & Mazur, Janice R. Mazur, William Edward Mazur, Jr.; Law Offices of Sharon L. Kinsey, Sharon L. Kinsey and Alison Lawton Perry for Plaintiffs and Appellants.

Law Offices of Sally Ann Williams and Sally Ann Williams for Defendants and Respondents.

## OPINION

**PREMO, Acting P. J.**—Plaintiffs Angelo Gouskos and Pete Gouskos sued defendants Aptos Village Garage, Inc. (Aptos), and Don Brownell for various causes of action arising from an automobile repair dispute. The trial court granted defendants' motion for directed verdict as to the fifth cause of action (violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) (Act)),[1] and a jury rendered a verdict for defendants on the remaining causes of action.[2] The trial court rendered judgment and a postjudgment order awarding defendants approximately $24,000 in statutory attorney fees. On appeal from the judgment, plaintiffs contend that the trial court erred in (1) granting defendants' motion for directed verdict, (2) excluding proffered evidence of prior similar incidents, and (3) granting defendants' motion for attorney fees. We disagree and affirm the judgment.

---

[1] Further unspecified statutory references are to the Civil Code.

[2] The jury did not render a verdict on the fifth cause of action. This was no doubt due to the trial court's failure to instruct the jury to return a defense verdict on that cause of action. This was apparently due to confusion over whether defendants moved for nonsuit or directed verdict. The reporter's transcript indicates that the trial court granted a motion for nonsuit; but the judgment indicates that the trial court granted a motion for directed verdict. Though the trial court's ruling is an issue on appeal, the nature of the order is immaterial given that the scope of review for orders granting nonsuits and directed verdicts is the same. (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 419, p. 480.)

## SCOPE OF REVIEW

■ "The order [granting nonsuit or directed verdict] may be made only when there is *no substantial conflict in the evidence*. In ruling on the motion, the court *does not consider credibility of witnesses* but gives to the evidence of the party against whom it is directed *all its legal value*, indulges every legitimate *inference* from such evidence in favor of that party, and *disregards conflicting evidence*." (7 Witkin, Cal. Procedure, *supra*, Trial, § 419, p. 480, original italics.) The same test applies to the appellate court. (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 259 [7 Cal.Rptr.2d 101].)

The principal issue on appeal is whether the Act applies to certain largely undisputed facts. Thus, our scope of review is principally independent. (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 821 [90 Cal.Rptr.2d 709].) To the extent that the material facts are disputed, our recount of the facts gives deference to the facts favoring plaintiffs.

## BACKGROUND[3]

On October 29, 1997, a tow truck driver delivered Angelo's 1969 Mustang to Aptos for repairs. In late November, mechanic Glenn Davis telephoned Angelo and conveyed that the repairs were complete and the invoice was $550. But a hose blew when Davis drove the car out of the shop, and the car remained for further repairs. At the end of December, Davis telephoned Angelo and stated that the repairs were complete. When he disclosed the amount of the bill, Angelo related that he did not have enough money. Angelo asked Davis to keep the car in the shop until he could accumulate the money. Davis agreed. After two weeks, Davis telephoned Angelo several times directing him to take the car and pay the bill. In one of these conversations, on February 18, 1998, Angelo said he would pick up the car the next day. Angelo failed to do so. On February 19, Angelo received a notice of lien sale demanding repair costs of $578, a towing fee of $32.50, lien sale costs of $70, and storage fees of $1,040 (accruing at $20 per day). On March 23, Aptos conducted a lien sale and sold the Mustang for $200. Aptos then successfully sued Angelo for the deficiency in small claims court. It thereafter served Angelo's father, Pete, with an order of examination. (Angelo worked for Pete in Pete's restaurant, and Aptos wanted to determine the salary arrangements for purposes of collecting the judgment by garnishing Angelo's wages.) According to plaintiffs' evidence, Darrell Correia, one of Aptos's owners, threatened Pete by telling Pete over the

---

[3]We will refer to plaintiffs by their given names for purposes of clarity and not out of disrespect. (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2 [102 Cal.Rptr.2d 743].)

telephone that he would be arrested and his business shut down if he did not take care of Angelo's debt. Plaintiffs also submitted evidence that Brownell, Aptos's other owner, joined in the threat. Pete satisfied the judgment in court when he attended the order of examination.

## The Act

One of the bases for the trial court's grant of directed verdict was that Aptos was simply not a "debt collector" as defined by the Act. We agree with the analysis, which depends upon the interplay of several definitions found in section 1788.2.

"The term 'debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. . . ." (§ 1788.2, subd. (c).) "The term 'debt collection' means any act or practice in connection with the collection of consumer debts." (§ 1788.2, subd. (b).) "The terms 'consumer debt' and 'consumer credit' mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (§ 1788.2, subd. (f).) "The term 'consumer credit transaction' means *a transaction* between a natural person and another person *in which property*, *services* or money *is acquired on credit* by that natural person from such other person primarily for personal, family, or household purposes." (§ 1788.2, subd. (e), italics added.)

Plaintiffs argue that the automobile repair transaction at issue constituted a "consumer credit transaction" (which, in turn, might arguably qualify defendants as "debt collectors") because defendants "provided both goods and services" in advance, before receiving payment. We disagree.

The first step in construing a statute is to examine the actual language of the statute. (*U.D. Registry, Inc. v. Municipal Court* (1996) 50 Cal.App.4th 671, 674 [57 Cal.Rptr.2d 788].) We give the words of the statute their ordinary, everyday meaning, unless, of course, the statute itself specifically defines the words otherwise. (*Ibid.*) If the meaning is without ambiguity, doubt, or uncertainty, then the language controls and there is nothing to interpret. (*Ibid.*)

Section 1788.2, subdivision (e), does not state that a consumer credit transaction means a transaction where a person *provides* property or services in advance of payment. The section states that a consumer credit transaction means a transaction where a person *acquires* property or services *on credit*. In other words, there is a consumer credit transaction when the consumer acquires something without paying for it.

We venture that in the automobile repair context there rarely would exist a consumer credit transaction because repair shops typically do not release repaired vehicles without payment; thus a vehicle owner would typically not acquire a shop's property or service until the property or service is paid for and he or she regains his or her own property.

Here, of course, it is axiomatic that Angelo never acquired property or services from defendants because he never regained his Mustang. The Act therefore does not apply to this case. The trial court therefore properly granted defendants' motion for directed verdict.

### EVIDENCE OF PRIOR SIMILAR INCIDENTS

One of plaintiffs' causes of action was for violation of the Automotive Repair Act. (Bus. & Prof. Code, § 9880 et seq.) This statute generally requires an automotive repair dealer to provide a written estimate and receive authorization before undertaking repairs.

Plaintiffs proffered the testimony of Albert Cuellar to the effect that Cuellar had his vehicle repaired by Aptos, Davis allowed Cuellar to leave the vehicle on the premises but said nothing about storage fees, and Aptos later demanded $1,000 for storage fees and conducted a lien sale after Cuellar could not pay. According to plaintiffs, the evidence was relevant for the purpose of showing defendants' habit and custom, apparently as rebuttal evidence to defendants' anticipated showing that "they did everything as best they could and they didn't know any better . . . ."

Defendants objected to the proffer on the ground of Evidence Code section 352. Defendants' counsel argued that she did not know whether the facts of the Cuellar case were similar since plaintiffs did not disclose Cuellar as a witness. (Plaintiffs took the position that Cuellar was an impeachment witness who did not need to be disclosed.) She posed: "Well, Your Honor, if we are going to be doing that, then we are going to have to get into Angelo's past practices of running up bills that he doesn't pay and making promises that he doesn't keep with his bill collector."

The trial court sustained defendants' objection. It explained: "We are not doing that, but on this particular item this seems to me—[plaintiffs' counsel], the problem is that you do get a whole other set of circumstances, and we are going to have to try that whole case in relation to this. Now, if it's relevant, it seems to me it's relevant on the issue that you say that no notice was given. Well, [defense counsel's] position is notice was given, so that's

the only basis that I hear from you that we really have relevance. [¶] And then in addition to that, the probative values far outweigh in my mind the prejudicial effect and the undue consumption of time here because we've got another set of circumstances. [¶] In addition, I'm concerned that it wasn't discovered over to them and so, you know, if we were going to go into this issue—I mean that might have been something we could have done at a time when you discovered that matter over to them and given them an opportunity to prepare on that. I don't know how many other witnesses it may take from their standpoint. I don't know the answers to any of that. [¶] At least at this point I'm satisfied unless the testimony is different than the circumstances sound like they are different, one, and so the relevance I think is tenuous. And, secondly, under 352, I just think that we are too far afield here as far as another case like this, and I just think that the undue consumption of time and sending the jury off in a direction here on another case, that's going to cause us just too much here to deal with, so I don't want to confuse them."

Plaintiffs also proffered the testimony of Jerry Michaels to the effect that Aptos gave Michaels an initial estimate, Aptos never received authorization for additional work, Aptos charged Michaels for additional work, Michaels sued Aptos in small claims court, and the case settled. According to plaintiffs, the evidence was relevant "to show the same sort of pattern and practice of failing to follow the law, failing to provide estimates as they are required to."

The trial court again excluded the evidence on relevance and Evidence Code section 352 grounds. It explained: "You know, if you wanted to give me a case that says, hey, you can present this kind of evidence, custom and habit in a situation where the relevance of it would be that they have a customer habit of not living up to the standard of care here to adhere to the statutory requirements, I would read it, but at this point it hasn't been discovered over. [¶] I'm concerned we are going to get into extraneous material such that it will unduly construe the time of the jury and send them off in directions that I'm not clear as to where we are going. I'm concerned about confusing the issue. At least my—tentatively my ruling under 352 is no; but as I said, if you wanted me [sic] to give me a case, I can look at it."

 Plaintiffs contend that the trial court abused its discretion in excluding the proffered evidence. They manifestly fail to carry their appellate burden.

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time

or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

■ We emphasize that it is the exclusive province of the trial court to determine whether the probative value of evidence outweighs its possible prejudicial effect. (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 402 [226 Cal.Rptr. 880].) And the trial court's exercise of discretion on this issue will not be disturbed on appeal absent a clear showing of abuse. (*Ibid.*)

"While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" (*Troxell v. Troxell* (1965) 237 Cal.App.2d 147, 152 [46 Cal.Rptr. 723].) "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." (*People v. Preyer* (1985) 164 Cal.App.3d 568, 573-574 [210 Cal.Rptr. 807].)

■ Nowhere do plaintiffs frame an abuse of discretion argument. They only urge in conclusory fashion that the evidence was "highly probative" and "not prejudicial." They make no attempt to convince that the trial court's decision was irrational in light of the factors supporting the decision.

Nor could plaintiffs make such an argument. The trial court could have rationally viewed the proffered evidence as marginally relevant because defendants' habit and custom were not in issue—the issue was whether defendants violated the Automotive Repair Act in this case. Either defendants did or did not violate the statute. Whether defendants had a habit of doing so is collateral. Moreover, the trial court could have rationally viewed the proffered evidence as unduly time consuming and confusing because the facts of the prior incidents had not been fleshed out in discovery and the extent to which the facts would need to be fleshed out at trial was unknown.

## ATTORNEY FEES

The trial court entered judgment on April 18, 2000. The judgment provided that it included "costs of suit in the amount of $___ to be determined

by the court. Defendants to submit a written request for taxing costs and attorney fees."[4] Defendants filed a motion for attorney fees on May 19. Plaintiffs filed a notice of appeal from the judgment on June 16. On July 10, the trial court entered an order awarding defendants attorney fees of $20,206.25 from Pete under section 1788.30, subdivision (c), and $3,500 from Angelo under section 3068, subdivision (d). The order directed the clerk to enter the attorney fees and costs "nunc pro tunc" into the judgment. Plaintiffs did not file a separate notice of appeal from the postjudgment order awarding attorney fees. (Code Civ. Proc., § 904.1, subd. (a)(2).)

Defendants argue that the attorney fee awards are not reviewable because plaintiffs failed to appeal from the postjudgment order.

Plaintiffs reply that the judgment incorporated the subsequent attorney fee order. They point to the language of the judgment and the language of the attorney fee order directing the clerk to enter attorney fees and costs nunc pro tunc into the judgment. They rely on *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993 [3 Cal.Rptr.2d 654] (*Grant*).

In *Grant*, the judgment awarded costs and attorney fees, the amounts were left blank, and the trial court determined the amounts in postjudgment proceedings. In rejecting the defendants' argument that the plaintiffs had lost their right to review of the cost and fee award by failing to file a separate appeal from the postjudgment order, the court pointed out that the judgment awarded costs and fees as a matter of right and the postjudgment order merely set the amount of the costs and fees. It reasoned that requiring a separate appeal served no apparent purpose under the circumstances. It held: "[W]hen a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal subsumes any later order setting the amounts of the award." (*Grant, supra,* 2 Cal.App.4th at p. 998.)

Here, however, the judgment did not award attorney fees. Rather, it contemplated that defendants would submit a request for attorney fees.

Defendants conclude that the issue of attorney fees was left for another day. That there were no blank spaces for attorney fees in the judgment tends to support defendants' point.

---

[4]The clerk later wrote on the judgment that prejudgment costs of $2,552.25 had been entered on May 15, 2000.

Plaintiffs nevertheless take the position that the judgment language awards attorney fees and left for another day only the amount.[5]

We agree that the language in the judgment is ambiguous: it can be read as directing defendants to submit a request for attorney fees (1) because defendants might be entitled to attorney fees (leaving the issue for another day), or (2) because defendants were entitled to attorney fees (leaving for another day only the amount).

In *Fish v. Guevara* (1993) 12 Cal.App.4th 142 [15 Cal.Rptr.2d 329] (*Fish*), we distinguished *Grant* and declined to review a fee award. There, the appellants challenged a discretionary award of expert witness fees. We pointed out that *Grant* held only that a cost award incidental to the judgment could be challenged on appeal from the judgment. We noted that costs and fees awarded in a judgment as a matter of right are incidental to the judgment but that a discretionary award is separately litigated and, thus, cannot be reviewed on appeal from the judgment.

We glean from *Grant* and *Fish* that the language of the judgment at issue can be construed as plaintiffs urge only if defendants were entitled to attorney fees as a matter of right.

Here, there were two distinct awards: one, an award under section 1788.30, subdivision (c); and two, an award under section 3068, subdivision (d).

Section 1788.30, subdivision (c), is part of the Act. It provides: "reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith."

The "may be awarded" language and "good faith" requirement unquestionably make an award of attorney fees under the Act a discretionary award. And plaintiffs concede that the award against Pete was discretionary. Accordingly, we are without jurisdiction to review the award of $20,206.25 against Pete because plaintiffs did not appeal from the postjudgment order awarding attorney fees.

Section 3068, subdivision (d), is part of a statutory scheme concerning liens on vehicles. It states: "In any action brought by or on behalf of the

---

[5]The nunc pro tunc language of the attorney fee order adds nothing. Either the judgment itself awarded fees or it did not. "The court can only make the record show that something was actually done at a previous time; a nunc pro tunc order cannot declare that something was done that was not done." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 63, p. 591, italics omitted.)

legal owner or lessor to recover a vehicle alleged to be wrongfully withheld by the person claiming a lien pursuant to this section, the prevailing party shall be entitled to reasonable attorney's fees and costs, not to exceed one thousand seven hundred fifty dollars ($1,750)."

The "shall be awarded" language unquestionably makes an award under this statute one as a matter of right. Accordingly, the award of $3,500 against Angelo is incidental to the judgment and reviewable.

We therefore limit our review to the award against Angelo.

■ Angelo contends that the award against him violates section 3068, subdivision (d), because the statute has a $1,750 cap that applies to each side in the case, not to each party on each side. He points to the language of the statute, "wrongfully withheld by the person claiming a lien," and argues that Brownell, as distinguished from Aptos, was not a person who claimed a lien. He alternatively claims that, if a $3,500 award is proper, the cost award against him ($1,577.25) should be stricken because that amount is in excess of the cap. There is no merit to these claims.

Section 3068, subdivision (d), does not award attorney fees to or against a person who claims a lien. It awards attorney fees to the prevailing party in litigation. Since plaintiffs sued defendants individually, each defendant was a prevailing party. As such, each defendant was entitled to attorney fees.

As to the costs, plaintiffs' point might have merit if this were a single-cause-of-action suit. This follows because section 3068, subdivision (d), states that attorney fees and costs are capped. But plaintiffs sued defendants, alleging five causes of action. Defendants were therefore entitled to their costs under the rules governing ordinary civil actions. (Code Civ. Proc., § 1032, subd. (b).)

## DISPOSITION

The judgment is affirmed.

Elia, J., and Mihara, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 17, 2002.