Filed 9/10/15  De Rogatis v. Shainsky CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LINDA DE ROGATIS, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>KAREN MICHELLE SHAINSKY,<br><br>Defendant and Respondent. | B254024<br><br>(Los Angeles County<br>Super. Ct. No. BC457891) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Jan Pluim, Judge.  Appeal dismissed.

The Arkin Law Firm, Sharon J. Arkin, for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza and Maureen M. Home; Taylor Blessey, Raymond L. Blessey, Patricia M. Tazzara and Anna Chung, for Defendant and Respondent.

# INTRODUCTION

Plaintiffs (the Estate and parents of Tara De Rogatis, hereinafter plaintiffs) filed a complaint against Dr. Karen Shainsky (defendant) alleging medical malpractice arising out of the suicide of their daughter Tara by a drug overdose. Tara suffered from both mental illness and chronic pain. Defendant, a rheumatologist, treated her for pain management associated with fibromyalgia. She prescribed a large quantity of oxycodone, a painkiller, and the next day Tara was found dead from an overdose of medications, including oxycodone. Defendant argued she had no liability because the oxycodone found in Tara's system was prescribed by a Dr. Ung, the prescription defendant issued had not been picked up by Tara, and the coroner did not find defendant's oxycodone prescription bottle at the scene.

The jury returned a unanimous defense verdict. The December 2, 2013, judgment provided defendant "shall recover . . . costs of suit" but left blank a space for the amount. Plaintiffs filed a notice of appeal on January 22, 2014. The notice was filed *after* defendant had filed a memorandum of costs seeking expert witness fees under Code of Civil Procedure section 998,[1] but well *before* any hearing or ruling on plaintiffs' motion to tax costs challenging those expert witness fees. The plaintiffs did not appeal from the subsequent post-judgment order awarding expert witness fees. According to plaintiffs' theory, the wording of the judgment with the blank space for an amount was sufficient to bring the section 998 award of expert witness fees within the appeal from the judgment because the court incorporated its section 998 award of expert fees into the blank space of the existing judgment, or that the notice of appeal was premature but valid. We disagree. The notice of appeal from the judgment does not encompass the separately appealable post-judgment order awarding expert witness fees. Therefore, this court lacks jurisdiction over plaintiffs' challenge to the order awarding expert witness fees. We agree with defendant and dismiss the appeal.

---

[1] All statutory references herein are to the Code of Civil Procedure unless otherwise noted.

## FACTUAL BACKGROUND

On March 23, 2010, Tara de Rogatis died from an overdose of a combination of prescription medications for mental health issues and painkillers. Plaintiffs Linda de Rogatis and Peter de Rogatis are Tara's parents.

Evidence at trial established that in 2005, Tara, who lived in Hollywood, started taking acting classes and auditioned for roles, appearing in a Budweiser commercial and some smaller films. Tara lived with her fiancé David MacEachern.

From 2005 to 2008, MacEachern and Tara used methamphetamine. In 2007, Tara began to complain of constant pain and auditory hallucinations. In 2007, Tara began treatment with psychiatrist Dr. Paul Bohn, and admitted to him that she abused methamphetamine. She was diagnosed with psychiatric disorders, including schizoaffective disorder, psychotic disorder, and dissociative disorder. Dr. Bohn prescribed Tara anti-depressants and anti-anxiety medication.

At this time, Tara began to visit numerous doctors complaining of pain all over her body, burning in her throat, and itching sensations. In April 2009, she visited the emergency room at Cedars-Sinai complaining of pain, burning and tingling.

After a series of referrals, Tara consulted with defendant, who is a rheumatologist. Based on Tara's symptoms, defendant believed Tara had fibromyalgia, which is a constellation of symptoms of diffuse pain in the patient's muscles and joints. In addition, defendant knew that fibromyalgia can be associated with psychiatric problems, such as anxiety and depression. Defendant prescribed 60 tablets of Norco, a painkiller, to be taken four times a day.

On March 22, 2010, the date of Tara's last visit to defendant, Tara had been feeling poorly. She could not manage the pain and stated that she wanted to die. Tara told defendant that she had been taking Norco for so long that she did not believe it would be effective. Tara asked defendant for stronger medication. Defendant prescribed a 25-day supply of Percocet (oxycodone).

Tara and MacEachern took defendant's Percocet prescription to CVS. According to MacEachern, at around 5:30 p.m., he and Tara took the prescription to CVS, but the pharmacist said, "I can't fill this," and Tara became upset. They returned to their apartment. About 8:00 p.m. Tara returned to the pharmacy by herself, and was gone for half an hour. According to MacEachern, Tara had the prescription with her when she returned, although the pharmacy's records indicate the prescription was not filled until 9:27 p.m., after Tara had returned home.

The next morning about 5:30 a.m., MacEachern was awakened by a phone call from Tara's mother. MacEachern went to the bedroom and discovered Tara's body.

Toxicology reports established Tara's blood contained more than the lethal levels of hydrocodone, oxycodone, Tramodol (an analgesic), and Zolpiderm (Ambien). The coroner concluded that Tara died of "multiple drug intoxication." Tara's medications collected from her bedroom included a prescription dated March 22, 2010, for oxycodone issued by a Dr. Ung. Defendant's prescription for Percocet (oxycodone) was not among them because Tara did not pick up the prescription.

At trial, there was conflicting expert testimony regarding whether defendant's prescription of painkillers to Tara fell below the standard of care because Tara's pain issues were caused by her psychiatric illness, not fibromyalgia.

The jury returned a unanimous verdict for defendant.


**PROCEDURAL BACKGROUND**

On June 1, 2012, defendant served plaintiffs with a section 998 offer containing a waiver of costs (estimated to exceed $25,000) and a waiver of a malicious prosecution claim, in full settlement of the action. Plaintiffs declined the offer.

On December 2, 2013, the trial court entered judgment for defendant. The amount of costs to be awarded to defendant was left blank. In that regard, the judgment stated, "Karen Shainsky D.O. shall recover from said plaintiffs costs of suit incurred herein in the amount of _____."

4

On December 17, 2013, defendant filed her memorandum of costs, seeking total costs of $123,684.27, including $62,534.50 in expert witness fees.

On January 6, 2014, plaintiffs filed their motion to tax defendant's costs, which was set for hearing February 14, 2014. Plaintiffs objected to defendant's costs on the basis they were unsubstantiated, unreasonable, unnecessary, and that the expert fees were not recoverable pursuant to the section 998 offer because defendant's offer was not made in good faith.[2]

On January 22, 2014, plaintiffs filed their notice of appeal from the judgment entered on December 2, 2013.

On February 26, 2014, the matter was heard, and the court granted plaintiffs' motion with respect to miscellaneous costs of $8,826.73, and denied it in all other respects. The court awarded defendant $114,857.54 in costs, including expert fees. The minute order states that a "Memorandum of Costs in the amount of $114,857.54 is hereby entered into the Judgment dated 12-2-13."

**DISCUSSION**

I.    SCOPE OF NOTICE OF APPEAL

Defendant contends the appeal must be dismissed because the notice of appeal from the judgment, filed before award of discretionary costs, did not encompass the later order awarding those costs. Plaintiffs urge that we find the notice of appeal premature and thus valid because the judgment left the costs blank, and the subsequent cost order specifically ordered that the awarded costs be entered into the judgment.

At issue here is whether the notice of appeal from the judgment also encompassed the later cost order, or whether a separate notice of appeal from the cost order was required. "While a notice of appeal must be liberally construed, it is the notice of appeal

---

[2]    Pursuant to section 1033.5, subdivision (b)(1), expert fees are not recoverable as costs. However, section 998, subdivision (c)(1) makes such fees recoverable in the event the party making a section 998 offer receives a more favorable result at trial.

5

which defines the scope of the appeal by identifying the particular judgment or order being appealed. [Citations.]" (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.) Furthermore, "''''[w]here several judgments and/or orders occurring close in time are separately appealable . . . each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal.'''''" (*Pfeifer v. John Crane, Inc*. (2013) 220 Cal.App.4th 1270, 1316 (*Pfeifer*).) Without a valid notice of appeal, this court lacks jurisdiction. (*Ibid.*)

As is the case here, if the appeal is filed before the announcement of the court's intended ruling, it is untimely and cannot be treated as a premature but timely notice of appeal. (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 960-961; *Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 691 (*Silver*).) In *Silver, supra,* 190 Cal.App.4th 688, we explained that the issue of whether a separate appeal is required or whether a premature appeal can be construed to encompass a later award of fees and costs is not whether fees or costs were ultimately recovered, but whether the entitlement to fees or costs was adjudicated by the original judgment, leaving only the amount of such fees for further adjudication. (*Id.* at p. 692.) In *Silver,* the judgment contained a blank for the insertion of attorneys' fees, but *Silver* found that "notwithstanding the language in the judgment, it is clear that the parties subsequently litigated in a separate postjudgment proceeding not only the reasonableness of the amount of the attorney[s'] fees . . . but also the threshold issue of . . . *entitlement* to such fees." (*Ibid.*)

Here, the issue is not whether expert witness fees were ultimately recovered as costs but whether the entitlement to those fees was adjudicated by the original judgment. They were not. The defendant did not become entitled to those fees until a cost bill was filed and the motion to tax determined in a separate proceeding. (See, *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 44; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 45-46.)

6

In the context of section 998 fees, *Pfeiffer, supra,* 220 Cal.App.4th 1270, the trial court entered judgment for the plaintiff but left the amount of prejudgment interest and costs blank.  A month after entry of judgment, the defendant filed a motion to tax costs, challenging entitlement to expert witness fees under section 998.  While the motion to tax costs was pending, the defendant filed a notice of appeal from the judgment.  (*Id.* at p. 1315.)  *Pfeiffer* rejected the defendant's contention that the notice of appeal from the judgment encompassed the cost order.  *Pfeiffer* reasoned that although a judgment modified only to add costs, attorneys' fees, and interest does not require a separate appeal from the cost order, that rule was premised on costs recoverable as a matter of right under section 1032.  In contrast, section 998 costs are discretionary.  (*Id.* at pp. 1317-1318.)  "For this reason, such an award [of section 998 costs] is collateral to the judgment" and a premature notice of appeal did not encompass section 998 costs.  (*Id.* at p. 1318; accord, *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 146-148 (*Fish*).)  *Fish* similarly held that "[a]n award of expert witness fees pursuant to section 998 is not incidental to the judgment but is instead a separately litigated issue," and thus required a separate notice of appeal.  (*Id.* at p. 148.)

Here, under the reasoning of *Silver, Pfeiffer* and *Fish,* the section 998 cost order was not subsumed within the notice of appeal from the judgment.  Notwithstanding the fact that the judgment contained a blank for entry of costs, and the minute order specifies that such costs are "to be entered into the judgment," the notice of appeal filed before costs are fixed can only be construed to cover section 1032 costs, which are a matter of right.  Discretionary section 998 costs, such as the expert fees at issue here, required a separate notice of appeal.  In other words, the issue of whether defendant was entitled to a discretionary award of expert witness fees was deferred until after judgment and litigated in a separate post-judgment proceeding that resulted in a determination and order in defendant's favor.  The post-judgment order awarding the expert witness fees was separately appealable and required a separate and timely notice of appeal.

Nonetheless, plaintiffs assert that *Pfeiffer* and *Fish* are distinguishable because the blank space for costs in the judgment means that defendant's entitlement to section 998 costs was already determined. In support, they point out that as reflected in the record, the minute order states that "[c]osts in the amount of $14,857.54 is hereby entered into the Judgment dated 12-2-13, and the amount was actually incorporated into the judgment." These facts do not insulate this case from the rule set forth in *Silver, Fish* and *Pfeiffer*. Whether or not the judgment contains a blank for costs has nothing to do with entitlement to such costs.[3]

## DISPOSITION

Plaintiffs' appeal from the order awarding expert witness fees is dismissed for lack of jurisdiction. Defendant is to recover her costs on appeal.


KIRSCHNER, J.[*]


We Concur:



TURNER, P. J.



KRIEGLER, J.

---

[3]     Since the appeal is dismissed, we do not reach plaintiffs' arguments that the section 998 offer was unreasonable and in bad faith. Thus, the trial court's ruling on defendant's entitlement to expert witness fees is not affected by our ruling.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.