Filed 8/8/22; Certified for Publication 8/22/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARITZA PAREDES,<br><br>    Cross-complainant and Respondent,<br><br>    v.<br><br>CREDIT CONSULTING SERVICES, INC.,<br><br>    Cross-defendant and Appellant. | H048092<br>(Santa Clara County<br>Super. Ct. No. 18CV328603) |

In this civil action, cross-defendant and appellant Credit Consulting Services, Inc. (Credit Consulting) filed suit against cross-complainant and respondent Maritza Paredes (Paredes) seeking to recover approximately $9,613 in allegedly unpaid dental bills, plus interest and attorney fees. More than one year later, Paredes filed a cross-complaint asserting Credit Consulting had made false representations in its complaint concerning the debt owed, in violation of the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA) and Rosenthal Fair Debt Collection Practices Act (Civ. Code § 1788 et seq.) (Rosenthal Act). Credit Consulting responded by filing an anti-SLAPP

motion[1] to strike the cross-complaint under Code of Civil Procedure section 425.16.[2] The trial court denied the anti-SLAPP motion after deciding under the second prong of the statutory analysis that Paredes had demonstrated a likelihood of prevailing on the merits of her causes of action.

On appeal from the denial of its anti-SLAPP motion, Credit Consulting challenges the trial court's ruling on the grounds that (1) the cross-complaint is time-barred under the one-year statute of limitations applicable to both statutory claims; (2) Paredes lacks standing to sue because the debt does not arise from a "consumer credit transaction" within the meaning of the Rosenthal Act; and (3) Credit Consulting cannot be held liable for pursuing a collections claim where it relied upon the information provided by its client that Paredes indeed owed a debt.

We conclude the trial court did not err in denying Credit Consulting's anti-SLAPP motion and therefore affirm the order.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

### A. Dental Services Give Rise to Alleged Debt

Paredes and her family obtained dental services from Tiffany N. Mai, D.D.S., Inc., d/b/a Mai Dental Specialists (Mai Dental) on various dates between May 2015 and March 2016. Before receiving dental treatment, Paredes understood from speaking with a Mai

---

[1] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[2] Unspecified statutory references are to the Code of Civil Procedure.

[3] We draw the following facts from the pleadings, the supporting declarations submitted in the trial court, and the documents submitted along with both parties' requests for judicial notice, which the trial court granted and neither side disputes. We accept Paredes's factual assertions as true for the purpose of resolving whether the trial court erred in its denial of the anti-SLAPP motion and consider only whether any contrary evidence from Credit Consulting establishes its entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 754 (*Laker*).)

Dental employee that Mai Dental would accept payment from Delta Dental as payment in full for any dental services provided to Paredes and her family, would waive any copayment not covered by Delta Dental, and would complete and file any required insurance claim forms. Based on these terms, with the understanding that payments made by Delta Dental would ultimately satisfy in full any debt that Paredes owed (but that she would owe Mai Dental for their services if, for some reason, Delta Dental denied her claim altogether), Paredes went forward with treatment for her family.

Paredes inquired on several occasions when visiting Mai Dental if she had any payment due, but she was told she did not. More than two years later, in June 2018, Paredes received a claim summary and check from Delta Dental for $2,195. Paredes tried to deliver the check to Mai Dental, but a different employee told her Mai Dental would not accept the check as full payment for the services provided. Paredes retained the uncashed check and claim summary from Delta Dental in her possession but did not make any payment to Mai Dental.

B. *Credit Consulting's Collection Action*

Meanwhile, in October 2017, Mai Dental assigned Paredes's debt for collection to Credit Consulting and later authorized Credit Consulting to file a collection action. On May 18, 2018, Credit Consulting filed the complaint in this action. According to the proof of service and Credit Consulting's collection notes, Paredes was served with the complaint on June 6, 2018. Paredes disclaims any recollection or knowledge of having been served with the summons and complaint.[4] Paredes states that she first learned about

---

[4] Paredes stated in her cross-complaint and in an initial declaration filed in opposition to the anti-SLAPP motion that she was never served with a summons and complaint. After counsel for Credit Consulting presented an audio recording of a telephone call in which, according to Credit Consulting's contemporaneous collection notes, Paredes acknowledged having been served, Paredes filed amended papers in the trial court that removed any mention of lack of service. Instead, Paredes attested in an amended declaration that after hearing the recorded telephone call, she remembered that

3

the lawsuit against her on August 8, 2019, when she received a memorandum of costs after judgment (based on Credit Consulting having filed entry of default and obtained a default judgment in June 2019) and related documents in the mail. The parties stipulated to set aside the entry of default and vacate the default judgment, and the trial court entered a set-aside order based on the stipulation.

### C. Paredes's Cross-Complaint

On October 21, 2019, more than one year after Credit Consulting's complaint was reportedly served on her in June 2018, Paredes filed the cross-complaint at issue here. She named Mai Dental and Credit Consulting (together, cross-defendants) as cross-defendants. The cross-complaint asserted that cross-defendants had engaged in unfair, deceptive, and abusive debt collection practices, in violation of the FDCPA and Rosenthal Act.

Paredes alleged, in support of the first cause of action under the FDCPA, that cross-defendants made and used false statements or representations in their attempt to collect the alleged debt, misrepresented the character, amount, and legal status of the alleged debt, as well as their entitlement to fees and compensation for collecting the alleged debt, and violated provisions of 15 United States Code sections 1692a, 1692e, and 1692f. Paredes similarly alleged, in support of the second cause of action under the Rosenthal Act, that cross-defendants attempted to collect the alleged " 'consumer debt' " within the meaning of Civil Code section 1788.2, subdivision (f), by misrepresenting the alleged debt, the compensation available, and the fees and interest allowable under the law. Paredes alleged that cross-defendants engaged in the statutory violations "willfully and knowingly" to coerce payment of the alleged debt.

---

Credit Consulting had called her on some unspecified date and she had tried, unsuccessfully, to explain to the Credit Consulting representative that Mai Dental had agreed to accept the insurance payment as payment in full for her family's dental services.

## D. *Credit Consulting's Anti-SLAPP Motion*

Credit Consulting filed an anti-SLAPP motion to strike Paredes's cross-complaint in its entirety. Credit Consulting argued the cross-complaint should be stricken because the cross-complaint's causes of action arose from protected litigation activity and Paredes had no probability of prevailing on the merits. On this second prong, Credit Consulting cited statute of limitations and other defects fatal to the viability of Paredes's cross-complaint.

Credit Consulting's special motion to strike was accompanied by declarations and exhibits. Rodney Meeks, Credit Consulting's president and chief executive officer, submitted a declaration in which he described his extensive experience in the collection industry, the collection methods utilized by Credit Consulting, and the procedures used to document Credit Consulting's efforts to establish contact with Paredes before filing suit. Meeks attested that Credit Consulting's contemporaneous collection notes and proof of service from the third-party process server established that Paredes was served with the complaint in this action on June 6, 2018. According to the collection notes, Paredes called Credit Consulting that same day and confirmed she was served with the summons and complaint that morning.

Regarding Paredes's probability of prevailing on the merits of her cross-complaint, Credit Consulting argued that, based on the June 6, 2018, date of service of the complaint, Paredes's filing of the cross-complaint more than one year later (in October 2019) was untimely and time-barred under the relevant statutes of limitation for the FDCPA and Rosenthal Act. Credit Consulting further maintained that Paredes's claims were "jurisdictionally barred" by 15 United States Code section 1692k(d), which provides that an action under the FDCPA may be brought in a court of competent jurisdiction "within one year from the date on which the violation occurs," (15 U.S.C. § 1692k(d)) and by Civil Code section 1788.2, subdivision (e), because the underlying

5

debt for dental services did not arise from a " 'consumer credit transaction' " (Civ. Code, § 1788.2, subd. (e))—a necessary element of a claim under the Rosenthal Act.

Paredes filed a written opposition to the anti-SLAPP motion and submitted a declaration that asserted facts related to the service of the complaint and notice of the action against her. In addition, Paredes addressed the nature of her consumer transaction and financial arrangement with Mai Dental. Paredes did not challenge Credit Consulting's ability to meet its burden under the first prong of the anti-SLAPP statute and conceded that her FDCPA and Rosenthal Act claims arose from litigation conduct protected by section 425.16. Nevertheless, Paredes claimed she met her prima facie burden on the second prong of showing a substantial likelihood of success on the merits of her claims.

Paredes argued the law is well-settled that the statute of limitations does not run on a cross-complaint cause of action if the right of action had not yet run at the time of the filing of the underlying complaint. Paredes further asserted application of the equitable tolling doctrine because she was never served with the complaint and was unaware of the action against her. In her declaration, Paredes attested that she was at "no point" served with a summons and complaint in this matter and maintained that the representations in the proof of service were false. Paredes also argued that her evidence established that Credit Consulting had violated the provisions of both the FDCPA and Rosenthal Act by using the complaint in the action to (1) collect amounts from Paredes that she did not owe, and (2) misrepresent its entitlement to fees and compensation under the statutes.

Shortly after filing her opposition papers, Paredes filed an amended opposition to the anti-SLAPP motion supported by an amended declaration, as noted above (see *ante*, footnote 4). The amended opposition omitted the equitable tolling argument that Paredes had not been served with process in the action but otherwise reasserted the arguments made in her initial opposition.

6

Credit Consulting filed a reply brief and additional declaration and exhibits. Credit Consulting countered that Paredes had not met her burden under section 425.16 to show the claims in her cross-complaint were legally or factually sufficient, particularly given Paredes's initial submission of "demonstrably false" evidence to support her tolling argument. Credit Consulting further asserted that, as a matter law, the claims in Paredes' cross-complaint did not " 'relate back' " to the filing of the complaint but, rather, were noncompulsory statutory claims to which the tolling doctrine relied upon by Paredes did not apply. Credit Consulting also argued that equitable tolling and other equitable principles either did not apply to Paredes's FDCPA and Rosenthal Act claims or were barred by the doctrines of laches and unclean hands. In addition, Credit Consulting challenged the timeliness of the amended opposition and amended declaration.

E. *Order Denying the Anti-SLAPP Motion*

The trial court issued a written order denying Credit Consulting's anti-SLAPP motion. The court noted there was no dispute that Credit Consulting satisfied the first step of the anti-SLAPP analysis by showing the claims against it arose from protected conduct in the form of statements " 'made before a . . . judicial proceeding' " (§ 425.16, subd. (e)(1)), namely, the filing of Credit Consulting's complaint.

Regarding the likelihood of success on the merits of Paredes's cross-complaint, the trial court found that Paredes had made the requisite prima facie showing based upon the allegations of the cross-complaint and her amended declaration, which taken as true asserted that Credit Consulting violated the FDCPA and Rosenthal Act. According to Paredes's allegations, Credit Consulting had falsely represented that she owed a debt when, in fact, she never owed the underlying debt because Mai Dental had agreed to accept payment from the insurer in full satisfaction of any amount owed. While the court characterized the inconsistency in Paredes's statements regarding service of the summons and complaint as "troubl[ing]," the court noted it would be inappropriate to assess credibility at this stage of the analysis. The court similarly recognized the potential

7

viability of the affirmative defenses asserted by Credit Consulting, including that of good faith reliance on the information provided by Mai Dental, as well as laches and unclean hands, but held that due to their fact-intensive nature those defenses did not defeat Paredes's prima facie showing for purposes of the second step of the anti-SLAPP analysis.[5]

The trial court rejected Credit Consulting's contention that the cross-complaint was time barred. It explained that appellate authority established "the filing of a complaint 'tolls' or 'suspends' the statute of limitations as to any cross-complaint against the plaintiff arising out of the same 'contract, transaction, matter, happening or accident' upon which the plaintiff's action is brought, i.e., a compulsory cross-complaint" (citing *Trindade v. Superior Court* (1973) 29 Cal.App.3d 857, 859–860 (*Trindade*)) and that more recent appellate authority from this district applies the same rule "to a permissive cross-complaint, which is how [Credit Consulting] characterizes Ms. Paredes's cross-complaint."

The trial court rejected Credit Consulting's interpretation of United States Supreme Court precedent as to the availability of equitable tolling for FDCPA actions (cf. *Rotkiske v. Klem* (2019) 589 U.S. __, 140 S.Ct. 355) and decided, in any event, that the federal precedent did not disturb California's tolling doctrine. The court also rejected Credit Consulting's argument that Paredes could not assert a claim under the Rosenthal Act because the alleged debt did not arise out of a " 'consumer credit transaction.' " (Civ. Code, § 1788.2, subd. (e).)

---

[5] The trial court explained this aspect of its ruling in a footnote. In a departure from its tentative ruling prior to the hearing on the anti-SLAPP motion, the court stated that to the extent Credit Consulting wanted to rely upon an affirmative defense of " 'good faith' " based on Mai Dental's representations to it that Paredes owed the debt, that showing "must happen later in the case" and would not defeat Paredes's prima facie showing for purposes of the second step of the anti-SLAPP analysis. As described in our analysis, *post*, Credit Consulting challenges the trial court's change in order from its tentative ruling on this issue.

Credit Consulting filed a timely notice of appeal of the trial court's order denying its anti-SLAPP motion.

## II. DISCUSSION

Credit Consulting raises three claims of error as to the trial court's ruling at the second step of the anti-SLAPP analysis. First, Credit Consulting contends that the trial court erred in finding Paredes had demonstrated a probability of success on the merits of her FDCPA and Rosenthal Act causes of action because her claims are time-barred. Credit Consulting maintains the applicable statutes of limitations began to accrue when the complaint was filed and were not tolled or suspended under equitable tolling principles. Second, Credit Consulting asserts that the trial court erred in determining this matter arose out of a " 'consumer credit transaction,' " as defined by the Rosenthal Act. Third, Credit Consulting avers that Paredes failed to meet her burden to demonstrate that its collection action violated the FDCPA where the evidence was not disputed that Credit Consulting filed suit in reasonable reliance upon the information provided by Mai Dental. We address each issue in turn.

### A. The Anti-SLAPP Statute

The statute commonly called the anti-SLAPP statute (§ 425.16) "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network*, *Inc*. (2019) 7 Cal.5th 871, 880-881 (*Wilson*).) The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) The remedy "authorizes a special motion to strike claims 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution

9

in connection with a public issue.' (§ 425.16, subd. (b)(1).)"[6] (*Wilson*, at p. 884.) By its own terms, the anti-SLAPP statute is to "be construed broadly" in furtherance of its stated goals. (§ 425.16, subd. (a); *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321 (*Barry*).)

"We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff (here, the cross-complainant) and evaluating the defendant's evidence (here, the cross-defendant's evidence) " ' " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 321.)

When a defendant brings a special motion under the anti-SLAPP statute to strike a cause of action, the trial court evaluates that motion using a two-step process: The first examines the nature of the conduct that underlies the plaintiff's allegations to determine whether the conduct is protected by section 425.16; the second assesses the merits of the plaintiff's claim. (*Barry*, *supra*, 2 Cal.5th at p. 321; see *Laker*, *supra*, 32 Cal.App.5th at p. 760.)[7]

---

[6] The statute provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

[7] In *Baral v. Schnitt* (2016) 1 Cal.5th 376, the California Supreme Court clarified that a *claim* rather than a cause of action is "the proper subject of a special motion to strike" (*id.* at p. 382) and helps to avoid confusion as to the so-called " 'mixed cause of action' " (*ibid.*) that combines allegations of protected activity under the statute with allegations of unprotected activity. We employ the suggested language here but do not alter or replace older case references to a "cause of action" challenged by special motion to strike.

The first step of the analysis, in which "the trial court determines whether the cause of action 'arises from' an 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " (*Laker*, *supra*, 32 Cal.App.5th at p. 760, quoting *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422), is not at issue. Paredes concedes her claims arise from protected conduct under section 425.16, subdivision (e), namely Credit Consulting's filing of the complaint and allegations made by Credit Consulting in the collection lawsuit. The parties' dispute centers on the second step of the anti-SLAPP analysis.

In the second step, the burden shifts to the plaintiff to demonstrate the merit of the challenged claim or claims by establishing a probability of success. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th at p. 884.) The plaintiff must " 'demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

In evaluating probability of success, "a trial court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' . . . ([] § 425.16, subd. (b)(2))." (*Barry*, *supra*, 2 Cal.5th at p. 321.) " ' " 'The court accept[s] as true the evidence favorable to the plaintiff [citation] and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Ibid.*) "[T]he statute permits the court to 'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' ([§ 425.16,] subd. (b)(2).) Through this 'summary-judgment-like procedure,' the statute authorizes the quick dismissal of meritless claims, thereby ensuring that SLAPP suits are ended ' " 'early and without great cost to the SLAPP target.' " ' " (*Id.* at p. 324.)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a

11

SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

### B.  The Federal FDCPA and California's Rosenthal Act

Congress enacted the FDCPA to address the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." (15 U.S.C. § 1692, subd. (a); see *Wade v. Regional Credit Ass'n* (9th Cir. 1996) 87 F.3d 1098, 1099.)  The FDCPA regulates the conduct of debt collectors by, among other things, forbidding "any false, deceptive, or misleading representation or means in connection with the collection of any debt." (15 U.S.C. § 1692e.)  Courts apply what is commonly termed the " 'least sophisticated debtor' standard" to claims arising under the FDPCA (*Wade*, at p. 1100), seeking in doing so to ensure that the law " 'protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.' " (*Clark v. Capital Credit & Collection Servs.* (9th Cir. 2006) 460 F.3d 1162, 1171.)

The Rosenthal Act is modeled on, and applies more broadly than, the federal FDCPA. (*Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 576 (*Best*).)  Its purpose is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." (Civ. Code, § 1788.1, subd. (b).)  Like its federal counterpart, the Rosenthal Act regulates the conduct of debt collectors in connection with the collection of consumer debts.  " '[C]onsumer debt' " is defined as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (Civ. Code, § 1788.2, subd. (f).)  And " 'consumer credit transaction' " is defined as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." (*Id.*, subd. (e).)

Courts interpret the Rosenthal Act broadly to effectuate its remedial purpose. (*Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 295 (*Davidson*).) "In addition to its other requirements and prohibitions, the Rosenthal Act generally requires debt collectors to comply with the provisions of the FDCPA. (§ 1788.17.)" (*Ibid.*) Indeed, a violation of the FDCPA is per se a violation of the Rosenthal Act. (*Best*, *supra*, 64 Cal.App.5th at p. 575; Civ. Code, § 1788.17.) As discussed further below, both statutes carry a one-year statute of limitations. (15 U.S.C. § 1692k(d); Civ. Code, § 1788.30, subd. (f).)

### C. *Second Step of the Anti-SLAPP Analysis*

#### 1. <u>Timeliness (Statute of Limitations Defense)</u>

Credit Consulting contends that Paredes cannot prevail on her FDCPA and Rosenthal Act claims (and thus her cross-complaint lacks the requisite minimal merit required by the second step of the anti-SLAPP framework) because she filed her cross-complaint more than one year after her claims accrued. Credit Consulting argues that equitable tolling principles do not apply to Paredes's federal or state claims and that the trial court erred in concluding otherwise. Paredes responds that by applying the concept of " 'relation back,' " her claims are timely.

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." (15 U.S.C. § 1692k(d).) So, too, the Rosenthal Act provides that "[a]ny action" under its provisions "may be brought . . . within one year from the date of the occurrence of the violation." (Civ. Code, § 1788.30, subd. (f).)

The parties agree that under these statutes the applicable limitations period is one year from the accrual of Paredes's federal and state claims. Credit Consulting asserts that the cross-complaint's claims accrued on May 18, 2018, the date its complaint was filed against Paredes and the alleged violations of the FDCPA and Rosenthal Act occurred. Paredes does not dispute that her claims accrued upon the filing of Credit Consulting's complaint. However, she maintains that although she filed her cross-complaint one year

13

and five months later, the claims are not time-barred because "the statute of limitations does not run on a cross-complaint cause of action that is alive at the filing of the complaint." Citing a prior decision by a panel of this court, *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69 (*ZF Micro Devices*), Paredes argues that regardless of whether her cross-complaint is characterized as compulsory or permissive, the trial court was correct to hold that because her claims arose from the representations in the collection complaint, the filing of the cross-complaint "relates back" to the date of the filing of the complaint.

We first consider Credit Consulting's argument that the tolling doctrine does not apply to a noncompulsory cross-complaint. Second, we address Credit Consulting's claim that the state tolling doctrine does not apply to federal FDCPA claims and, relatedly, cannot be applied to Rosenthal Act claims.

> a. Application of the Tolling Doctrine to a Noncompulsory Cross-Complaint

As a rule, "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) A cause of action typically "accrues at 'the time when the cause of action is complete with all of its elements.' " (*Ibid.*) However, certain equitable exceptions "may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*).) "Resolution of the statute of limitations issue is normally a question of fact." (*Fox*, at p. 810.) But where, as here, the application of the statute of limitations on undisputed facts presents a purely legal question, we review it independently. (See *Aryeh*, at p. 1191.)

We recognize that, absent the application of an equitable tolling principle or a rule under which the cross-complaint would "relate back" to the filing of the complaint, Paredes's claims would be time-barred. It is undisputed that her claims under the

14

FDCPA and Rosenthal Act arose entirely from Credit Consulting's filing of the complaint alleging that Paredes owes a debt, and related fees and costs, which Paredes asserts she did not owe because Mai Dental agreed to accept payment from Delta Dental as payment in full.

As the trial court observed, although Paredes originally claimed she never received service of the summons or complaint, she subsequently withdrew her " 'lack of service allegations.' "[8] It therefore appears undisputed, for purposes of ascertaining the date of accrual of the cross-complaint, that the alleged violations under the FDCPA and Rosenthal Act were " 'complete with all of [their] elements' " (*Fox*, *supra*, 35 Cal.4th at p. 806) as of the filing of the complaint on May 18, 2018. The key issue is therefore whether the tolling or "relation back" mechanism espoused in *ZF Micro Devices* applies to alter the running of the limitations period here. (See *Aryeh*, *supra*, 55 Cal.4th at p. 1192.)

Credit Consulting asserts that case authority establishes that the relation back doctrine only applies to compulsory cross-complaints, and that the holding in *ZF Micro Devices* represents a departure from the general rule and is an "outlier" among California appellate decisions. We decide, however, having carefully considered *ZF Micro Devices* and other case authority, that Credit Consulting has not offered any persuasive justification to depart from the conclusion drawn by this court in that case.

It is well established that the filing of an underlying lawsuit tolls the statute of limitations for compulsory cross-complaints. (See *Trindade*, *supra*, 29 Cal.App.3d at p. 860). *ZF Micro Devices* addressed what at the time was an unsettled question: Whether

---

[8] Credit Consulting devotes several pages of argument on appeal to attacking the "false testimony" that Paredes provided in her initial opposition to the anti-SLAPP motion. However, because Paredes does not assert on appeal that the statute of limitations for the allegations of her cross-complaint should be tolled because she was not served with the complaint, the credibility of Paredes's account is irrelevant to the question before us, which is purely one of law.

tolling of a cross-complaint's statute of limitations upon the filing of the underlying lawsuit equally applied to permissive cross-complaints.[9] (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 72.) According to the court, "authors of major California treatises had expressed conflicting views on the subject" (*id.* at pp. 72–73) such that the "applicability of the tolling doctrine to permissive cross-complaints [wa]s not free of doubt." (*Id.* at p. 84.)

The court in *ZF Micro Devices* examined secondary sources, prior published decisions (all of which predated 1971), and California's former counterclaim and cross-complaint statutes. Those statutes historically restricted the counterclaim "to claims arising out of the contract or transaction set forth in the complaint" (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 85), before legislation enacted in 1971 abolished the limited counterclaim and allowed a defendant or cross-defendant to "assert in the cross-complaint '[a]ny cause of action against any of the parties who filed the complaint or

---

[9] The distinction between a "permissive" and "compulsory" cross-complaint turns on whether the cause of action asserted by the defendant against the plaintiff is "related to" the subject matter of the plaintiff's complaint. (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 85.) With limited exceptions, a party sued in a complaint or cross-complaint may file what is commonly termed a "permissive" cross-complaint, that is, "a cross-complaint setting forth . . . [¶] (a) *Any* cause of action he has against any of the parties who filed the complaint or cross-complaint against him." (§ 428.10, italics added.) By contrast, if a defendant's cause of action against the plaintiff is "related to" the subject matter of the complaint, the failure to plead it in a cross-complaint will bar the defendant from asserting it in any later lawsuit. (§ 426.30, subd. (a).) A " '[r]elated cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c).) Thus, "California's compulsory cross-complaint statute prohibits a party from asserting a claim if, at the time the party answered a complaint in prior litigation, it failed to allege in a cross-complaint any then-existing, related cause of action against the plaintiff." (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 952, citing § 426.30, subd. (a).) Whether an unasserted claim is a "related" cause of action within the meaning of the compulsory cross-complaint statute is often a matter of dispute between the parties to an action. (See *id.* at pp. 952–953, 960–965.)

16

cross-complaint against him [or her],' regardless of whether such claims were related to those upon which the suit was brought." (*Id.* at p. 86, quoting § 428.10, subd. (a).)

The court in *ZF Micro Devices* ultimately concluded that "a defendant's cross-complaint against the plaintiff, irrespective of whether it is related to the matters asserted in the complaint, is entitled to the benefit of the tolling doctrine." (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 92.) In reaching this decision, the court relied primarily on pre-1971 California Supreme Court tolling cases which, according to *ZF Micro Devices*, "characterized the tolling doctrine as embracing all cross-claims by a defendant against the plaintiff, regardless of their relatedness to the claims asserted in the complaint." (*Id.* at p. 91.) Most notably, in *Jones v. Mortimer* (1946) 28 Cal.2d 627, the California Supreme Court rejected the argument that a counterclaim, which it held was unrelated to the claim alleged in the complaint because the two claims "arose out of two separate and wholly independent transactions" (*id.* at p. 630), was barred by the statute of limitations (*id.* at p. 634). As stated by the high court in *Jones*, "The statute of limitations is not available to plaintiff as to defendants' counterclaim if the period has not run on it at the time of commencement of plaintiff's action even though it has run when the counterclaim is pleaded." (*Id.* at p. 633.)

The court in *ZF Micro Devices* observed that the Supreme Court in *Jones* reiterated tolling doctrine principles articulated in earlier California Supreme Court cases. (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at pp. 87–88; see, e.g., *Whittier v. Visscher* (1922) 189 Cal. 450, 456; *Union Sugar Co. v. Hollister Estate Co.* (1935) 3 Cal.2d 740, 746.) The court in *ZF Micro Devices* acknowledged it was unable to identify "any post–1971 case that has specifically held that the tolling doctrine applies to permissive, as well as compulsory, cross-complaints, as cross-complaints are defined under section 426.10 et seq." (*ZF Micro Devices*, at p. 88.) Nevertheless, the post-1971 intermediate appellate decisions which recited the rule stated in *Jones* did so "with a significant, unexplained, revision limiting the tolling doctrine to cross-complaints with claims related to those

17

alleged in the complaint." (*Id.* at p. 89.)  The court reviewed these decisions and declined to read them as stating a general rule that the tolling doctrine applies only to compulsory cross-complaints, principally because those cases did not actually concern noncompulsory cross-complaints.  (*Id.* at pp. 89–90.)

We adhere to the reasoning set forth in *ZF Micro Devices*.  In arguing that this court should eschew the holding in that decision, Credit Consulting relies on those appellate decisions which present, as the "general rule," the tolling doctrine as applicable only to a compulsory cross-complaint.

Thus, in *California-American Water Co. v. Marina Coast Water Dist.* (2016) 2 Cal.App.5th 748, the court stated, "As a general rule, the filing of a complaint tolls the statute of limitations applicable to a cross-complaint so long as the cross-complaint is related to the original complaint and its causes of action were not barred when the original complaint was filed." (*Id.* at p. 763, citing *Trindade*, *supra*, 29 Cal.App.3d at p. 860.)  But as the court explained in *ZF Micro Devices*, the statement of the rule in *Trindade*, later repeated in *California-American Water* and other cases, failed to specify that the underlying facts in each of those decisions concerned only a compulsory cross-complaint and so the court had no opportunity to examine the rationale for not applying the tolling doctrine to permissive cross-complaints.  (See *ZF Micro Devices*, *supra*, 5 Cal.App.5th at pp. 87–88, 91, fn. 12.)

Credit Consulting also cites *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 841, as support for the proposition that application of the tolling doctrine is improper.  That case, however, involved a plaintiff's attempt to add claims to a second and third amended complaint in a representative action against her employer and did not address tolling of a noncompulsory cross-complaint; it therefore is not authority for the issue before us.  (See *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 (*Kinsman*).)

Credit Consulting argues that *ZF Micro Devices* is factually and procedurally distinguishable because the nature of the extended and complex litigation in that case

18

made it difficult to ascertain when certain causes of action accrued, whereas this case involves "clear accrual of the non-related claims" as of the filing of the collection complaint. We are not persuaded this distinction carries legal significance.

The analysis in *ZF Micro Devices* demonstrated that in its "decisions predating legislation that abolished the counterclaim and redefined the cross-complaint, the Supreme Court characterized the tolling doctrine as embracing *all* cross-claims by a defendant against the plaintiff, regardless of their relatedness to the claims asserted in the complaint." (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 91.) Moreover, "the rationale for the doctrine—that by filing the complaint 'the plaintiff has thereby waived the [statute of limitations defense] and permitted the defendant to make all proper defenses to the cause of action pleaded' [citation] —appears applicable to both compulsory and permissive cross-complaints." (*Id.* at p. 92.) Nor has Credit Consulting identified, and we have not found, subsequent published case authority disagreeing with the analysis in *ZF Micro Devices*. Indeed, a panel of this court recently applied the law articulated in *ZF Micro Devices* to a determination involving application of the continuous accrual theory to the statute of limitations defense. (*Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 355 [citing "well-established legal principles,"]; *id.* at pp. 377–378 [as explained in *ZF Micro Devices*, that "plaintiff's filing of a complaint suspends the running of the statute of limitations as to any claims by the defendant against the plaintiff that are not time-barred when the action is filed"].)

We decide the trial court did not err in concluding, under *ZF Micro Devices*, that the filing of the complaint in this action acted to " 'toll[]' " or " 'suspend[]' " the statute of limitations as to the cross-complaint. Whether the cross-complaint is construed as compulsory (as Paredes seems to suggest) or permissive (as Credit Consulting maintains),

Paredes' cross-complaint "is entitled to the benefit of the tolling doctrine."[10] (*ZF Micro Devices*, *supra*, 5 Cal.App.5th at p. 92.)

    b. Application of the State Tolling Doctrine to Federal Claims

  Credit Consulting next contends that the trial court erred as a matter of law in applying the state law tolling doctrine to the federal FDCPA cause of action. Credit Consulting asserts that the FDCPA, as interpreted by the United States Supreme Court in *Rotkiske*, *supra*, 589 U.S. __ [140 S.Ct. 355], contains a strict, one-year statute of limitations that is incompatible with California's equitable tolling doctrine. Moreover, Credit Consulting asserts that a rule of state procedure must yield to federal law by virtue of the Supremacy Clause of the United States Constitution. It further argues that the FDCPA's limitations period has been interpreted as a jurisdictional bar for claims brought outside the one-year period, and that jurisdictional time limits are not subject to tolling. In response, Paredes maintains that Credit Consulting is incorrect about the jurisdictional bar; Paredes does not address the contention that *Rotkiske* and federal law preclude application of the equitable tolling doctrine.

  We begin by addressing the Supreme Court's decision in *Rotkiske*, which we decide is of limited applicability here. In *Rotkiske*, the Supreme Court considered "whether the 'discovery rule' applies to the FDCPA's limitations period" and held it does not. (*Rotkiske*, *supra*, 589 U.S. at p. __ [140 S.Ct. 355, 360].) At issue was the plaintiff's attempt to bring a FDCPA action against a debt collector more than six years after learning the debt collector had obtained a default judgment against him due to faulty service in a prior collection suit. (*Id.* at p. 359.) The plaintiff argued that despite the plain meaning of the statutory limitations period (15 U.S.C § 1692k(d)), which "sets the

---

[10] It appears from the record that the issue of whether the cross-complaint claims are compulsory or permissive was not adjudicated in the trial court. We need not determine the nature of the cross-complaint claims, given our conclusion that the tolling doctrine applies to both.

date of the violation as the event that starts the one-year limitations period" (*id.* at p. 360), the court "should interpret [15 U.S.C.] § 1692k(d) to include a general 'discovery rule' that applies to all FDCPA actions." (*Ibid.*)

The United States Supreme Court rejected application of the "discovery rule" to the FDCPA's limitations period, noting that such "judicial supplementation" (*Rotkiske*, *supra*, 589 U.S. at p. __ [140 S.Ct. 355, 361]) to the statutory text "is particularly inappropriate" when Congress has shown, through various statutory enactments, that it knows how to expressly provide for the running of a limitations period to begin "upon the *discovery* of a violation, injury, or some other event." (*Ibid.*) The court declined to address the plaintiff's alternative contention for his action to be treated as timely based on an equitable doctrine known as the "fraud-specific discovery rule," which "delays the commencement of the statute of limitations in fraud actions" (*ibid.*), because the plaintiff had failed to preserve the issue on appeal or raise it in his petition for certiorari. (*Ibid.*) In a footnote, the court stated it would "not decide whether the text of 15 U.S.C. § 1692k(d) permits the application of equitable doctrines." (*Ibid.*, fn. 3.)

We understand the holding in *Rotkiske* to be specific to the question of when the FDCPA's limitations period begins to run (i.e., on the date on which the alleged FDCPA violation occurs as stated in the statute). (See *Rotkiske*, *supra*, 589 U.S. at p. __ [140 S.Ct. 355, 360].) Because the analysis articulated by the majority opinion was largely textual, based on the unambiguous language tying the running of the limitations period to "the date on which the violation occurs" (15 U.S.C § 1692k(d)), we conclude that *Rotkiske* provides little guidance for application of an equitable doctrine which carries different implications for the statutory text. That the court expressly declined to decide whether the statutory limitations provision permitted the application of other equitable doctrines further supports this conclusion. In Credit Consulting's own words, "the court [in *Rotkiske*] did not have a chance to analyze such a doctrine's applicability if at all, because the issue was not before the Court." We therefore conclude, given that " '[a]n

21

opinion is not authority for propositions not considered' " (*Kinsman*, *supra*, 37 Cal.4th at p. 680), that *Rotkiske* is not authority for the proposition that the equitable doctrine, as applied by California courts to toll cross-complaint claims upon the filing of the complaint, is inapplicable as a matter of law to a cause of action under the FDCPA.

We likewise are not persuaded that the Supremacy Clause of the United States Constitution has any bearing here on the application of the tolling doctrine to Paredes's cross-complaint. In support of its argument, Credit Consulting cites general case authority on federal preemption. (See, e.g., *Crawford v. Gould* (9th Cir. 1995) 56 F.3d 1162, 1163 [stating the "main issue on appeal" was whether federal law on nonassignment of social security benefits preempted state procedures for deducting benefits from patients' hospital accounts].) These cases confirm the fundamental principle that preemption applies when there is a conflict between the federal and state laws. Thus, "[i]f California's procedure conflicts with this federal statute, the Supremacy Clause of the United States Constitution requires that the state procedure be set aside." (*Id.* at p. 1165; accord *Newman v. Checkrite California, Inc.* (E.D. Cal. 1995) 912 F.Supp. 1354, 1365 [noting by virtue of the Supremacy Clause, "state regulation must yield [to the FDCPA] to the extent they are in conflict"], superseded by statute on other grounds, as stated in *Medrano v. Great Mercantile Agency, Inc.* (E.D. Cal., June 20, 2018, No. 1:17-CV-1392-LJO-JLT) 2018 WL 3105026, at *6.)

Here, there appears to be no conflict. Both statutes of limitations as set forth in the FDCPA and the Rosenthal Act provide for a one-year limitations period from the date of the violation. (15 U.S.C. § 1692k(d); Civ. Code, § 1788.30, subd. (f).) To the extent Credit Consulting asserts that the Supreme Court's decision in *Rotkiske* precludes tolling the statute of limitations because the FDCPA is silent as to any equitable tolling exception, we disagree that the opinion offers guidance on this point. For these reasons, we reject Credit Consulting's supremacy clause argument.

22

We turn to the final argument advanced by Credit Consulting: That the FDCPA's limitations period is a *jurisdictional limit* and, as such, is not subject to tolling. Credit Consulting avers that due to the "jurisdictional limitation period," (underlining omitted) Paredes's FDCPA claims must be stricken for lack of jurisdiction. This argument falls short because the cases that Credit Consulting relies upon merely establish that the one-year limitations period runs from the date of violation and may not be extended or suspended by factual circumstances, such as lack of notice to the debtor.

In *Mattson v. U.S. West Communications, Inc.* (8th Cir. 1992) 967 F.2d 259 (a case relied upon by Credit Consulting), the Eighth Circuit Court of Appeals rejected the proposition that the limitations period under 15 United States Code section 1692k(d) begins to run on the date of receipt of debtor letters rather than their mailing date. It held, "[t]he date on which [the debt collector] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered section 1692k(d)." (*Id.* at p. 261.) The court in *Mattson* did not consider whether equitable tolling principles might toll or suspend the statute of limitations.

The same is true for the unreported decision in *Weiner v. McCoon* (S.D. Cal. Sept. 24, 2007, No. 06-CV-1328-IEG (POR)) 2007 WL 2782843, at *5, which held that the statute of limitations for FDCPA violations is not "suspended indefinitely" when a debtor claims to have not received notice from a debt collector. (*Id.* at p. 5.) Finally, Credit Consulting cites *Zipes v. Trans World Airlines, Inc.* (1982) 455 U.S. 385, 393 for the proposition that jurisdictional time limits are, in Credit Consulting's words, "not subject to tolling." This appears to be a misreading of the United States Supreme Court's decision in *Zipes*, which considered whether the statutory time limit to bring a claim for unlawful sex discrimination under Title VII of the Civil Rights Act of 1964 was "a jurisdictional prerequisite" to filing suit in federal court. (*Zipes*, at p. 387.) The court ultimately held that filing a timely charge of discrimination was "not a jurisdictional

23

prerequisite to suit in federal court, but a requirement that, *like a statute of limitations, is subject to waiver, estoppel, and equitable tolling*." (*Id.* at p. 393, italics added.)

In sum, Credit Consulting relies largely on case authority that does not address the proposition it advances on appeal. Because Credit Consulting has not demonstrated that United States Supreme Court authority or federal law precludes as a matter of law the tolling of federal FDCPA claims, we conclude that the trial court did not err in applying to Paredes's cross-complaint California's equitable tolling doctrine, as articulated in *ZF Micro Devices*, *supra*, 5 Cal.App.5th at page 92.

### 2. Consumer Credit Transaction

Credit Consulting next contends that the Rosenthal Act requires a " 'consumer credit transaction,' " as defined by the statute, to assert a claim under the statute and that Paredes's cross-complaint lacks this necessary element.

The definition of " 'consumer credit transaction' " is "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." (Civ. Code, § 1788.2, subdivision (e) (hereafter, Civil Code section 1788.2(e).) Credit Consulting asserts that Paredes lacks standing to pursue (let alone prevail on) her state claims because her indebtedness to Mai Dental did not arise from a " 'consumer credit transaction' " as defined by Civil Code section 1788.2(e). Paredes counters that the record, including her sworn declaration and Credit Consulting's own pleading, directly repudiates Credit Consulting's argument.

As noted, Civil Code section 1788.2(e) defines a " 'consumer credit transaction' " as "a transaction between a natural person and another person in which property, services, or money is acquired *on credit* by that natural person from the other person primarily for personal, family, or household purposes." (Civ. Code, § 1788.2(e), italics added.) The Rosenthal Act also defines the terms " 'consumer debt' " and " 'consumer credit' " to mean "money, property, or their equivalent, due or owing or alleged to be due

24

or owing from a natural person by reason of a consumer credit transaction." (Civ. Code, § 1788.2, subd. (f).)

The statute does not define the phrase "on credit" as used in Civil Code section 1788.2(e). At least one appellate court has construed the phrase and decided "that the 'ordinary and usual meaning' of the phrase 'on credit' can be stated as obtaining something of value without immediate payment on the promise to make a payment or payments in the future." (*Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 296 (*Davidson*).) In accordance with this meaning, the court in *Davidson* construed section 1788.2(e) as "providing that a 'consumer credit transaction' is 'a transaction between a natural person and another person in which property, services or money is acquired [without immediate payment and with the promise to pay in the future] by that natural person from such other person primarily for personal, family, or household purposes." (*Id.* at pp. 298–299.) Similarly, a panel of this court previously observed, based on the language of the statute, that Civil Code section 1788.2(e) does not imply "a transaction where a person *provides* property or services in advance of payment" but rather "means a transaction where a person *acquires* property or services *on credit*." (*Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 759 (*Gouskos*).) That is, "there is a consumer credit transaction when the consumer acquires something without paying for it." (*Ibid.*)

Following the definitional provisions and their interpretation in case law, Credit Consulting argues that a "consumer credit transaction" means a transaction where the goods or services are provided "in return for the agreement to make future payment." It claims that unlike standard "credit transactions" (such as a loan agreement or credit card agreement), the receipt of services, followed by a refusal to pay, is not a consumer credit transaction, and that courtesy billing of insurance does not absolve the individual of responsibility for payment of the deductible, copay, or for the amount that insurance does not cover. Credit Consulting, in essence, maintains that Paredes has failed to meet her

25

burden to establish the source of alleged debt was a "consumer credit transaction" because her pleading stated that she was not required to do, or pay, anything for the payment forbearance, and only had to wait for Mai Dental to complete the insurance claim forms.

Considering the pleadings and declarations, and accepting as true the evidence favoring Paredes (see *Barry*, *supra*, 2 Cal.5th at p. 321; § 425.16, subd. (b)(2)), we decide there is ample basis to conclude that Paredes's indebtedness to Mai Dental arose from a " 'consumer credit transaction' " within the meaning of the Rosenthal Act. Moreover, Credit Consulting has not defeated Paredes's showing as a matter of law (*Barry*, at p. 321), and in fact its pleading supports our conclusion.

In her cross-complaint, Paredes alleged that in her initial visit to the dental office, Maria (a Mai Dental employee) told her that Mai Dental "would accept payment from Delta Dental insurance as payment-in-full for any dental services provided to [Paredes] and her family, [and] that [Mai Dental] would waive any co-payment not covered by Delta Dental." Paredes further alleged that as a result of the dental services provided to her family, she purportedly "incurred a financial obligation in the form of a consumer credit account." Paredes "generally denie[d]" that she owed the alleged debt, which she asserted was "primarily for personal, family or household purposes and is therefore a 'consumer debt' as that term is defined by [] Civil Code, § 1788.2[,subd.] (f)."

In addition, as previously noted, Paredes filed a declaration and amended declaration in response to the anti-SLAPP motion. In these, she reiterated and further attested to her understanding of the financial arrangement. Paredes declared that although she expected Mai Dental to honor their agreement and accept the insurance payment as payment in full for the services provided, she did not believe the services were " 'free' " or that she had no future obligation to make payments; rather, she expected that the payments made by Delta Dental would satisfy her debt in full, but

26

additionally "understood that [she] would owe Mai Dental for their services, if, for some reason, Delta Dental denied the claims."

Thus, accepting as true the evidence favorable to Paredes, and according to the pleadings and declarations, Paredes obtained dental services, for personal or family purposes, " 'on credit' " (*Davidson*, *supra*, 21 Cal.App.5th at p. 296)—meaning "without immediate payment and with the promise to pay in the future." (*Id.* at pp. 296–297.)  In accordance with their agreed-upon financial arrangement, such future payment would be made by Delta Dental upon the filing of the claims and accepted by Mai Dental as payment in full; however, if for some reason the insurance wholly rejected the claim, Paredes understood that she would be financially responsible.  Paredes thereby "acquire[d] something without paying for it" (*Gouskos*, *supra*, 94 Cal.App.4th at p. 759) but with an understanding that it would have to be paid.

Credit Consulting's pleading in the collection action moreover supports this reading of the evidence by alleging that Paredes entered into a contract "on an open book account for money due."  The Civil Code defines a " 'book account' " in relevant part as "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith." (Civ. Code, § 337a.)  "A book account is 'open' where a balance remains due on the account."  (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 969.)

We conclude that Paredes met her burden, in opposing the anti-SLAPP motion, to demonstrate that her Rosenthal Act claim was based upon a " 'consumer credit transaction' " within the meaning of the statute.  Having shown that the pleadings and evidence satisfied this aspect of her Rosenthal Act claim, we decide the trial court did not err in denying Credit Consulting's anti-SLAPP motion on this ground.

### 3. Bona Fide Error Defense

Credit Consulting also challenges the trial court's change in decision from its tentative ruling to its order denying the anti-SLAPP motion on the question whether Credit Consulting's filing of the collection complaint violated the FDCPA or was excepted from liability under the FDCPA's bona fide error defense, set forth in 15 United States Code section 1692k(c).

15 U.S.C. section 1692k(c) states, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (15 U.S.C. § 1692k(c).) Under the bona fide error defense, "if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report." (*Clark v. Capital Credit & Collection Servs.* (9th Cir. 2006) 460 F.3d 1162, 1177 (*Clark*).)

Credit Consulting contends that Paredes did not dispute that Credit Consulting filed suit upon information provided by its creditor client, Mai Dental, that a debt was owed, and only after sending Paredes a validation of debts notice, as required by 15 United States Code section 1692g, to which she never responded. Credit Consulting argues that Paredes has not shown its reliance on Mai Dental's representation about the alleged debt, and its belief the debt was accurate and owed, was unreasonable, especially given that Paredes never invoked the mechanisms found in the FDPCA to address her claim that she did not owe the debt. Paredes does not appear to respond to or address the question of bona fide error in her respondent's brief.

28

As an initial matter, we note that Credit Consulting does not appear to have raised this argument in its anti-SLAPP motion, which asserted only that Paredes's claims were time-barred, "jurisdictionally barred" by the FDCPA's one-year statute of limitations provision titled "Jurisdiction," and that her Rosenthal Act claims did not arise from a consumer credit transaction. Nevertheless, the trial court appears to have considered the bona fide error defense,[11] and so we briefly address it here.

"When evaluating an affirmative defense in connection with the second prong of the analysis of an anti-SLAPP motion, the court, following the summary-judgment-like rubric, generally should consider whether the defendant's evidence in support of an affirmative defense is sufficient, and if so, whether the plaintiff has introduced contrary evidence, which, if accepted, would negate the defense." (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 434; see also *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 715.) As the California Supreme Court noted in addressing the litigation privilege as a defense to civil extortion and other claims in the context of anti-SLAPP litigation, "[t]he litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.)

We decide, based on the pleadings and declarations, that Credit Consulting cannot establish, at this juncture, a complete defense to the FDCPA claims. To be sure, the Meeks declaration submitted in support of Credit Consulting's anti-SLAPP motion described the agency's collection policies and procedures utilized in attempting to collect the alleged debt. But Credit Consulting has not identified any evidence in the record that

---

[11] The trial court's order includes a footnote that states, "To the extent [Credit Consulting] wants to rely upon an affirmative defense of 'good faith' (e.g., because it reasonably relied on Mai Dental Specialists's representations to it that Mrs. Paredes owed the debt), see 15 U.S.C. § 1692k[](c), that must happen later in the case. The possibility of this defense does not defeat Mrs. Paredes's prima facie case, for purposes of the second step of the anti-SLAPP analysis."

would establish it "reasonably relie[d] on the debt reported by the creditor" (*Clark*, *supra*, 460 F.3d at p. 1177) or filed the complaint for damages, attorney's fees, and costs based upon "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (15 U.S.C. § 1692k(c).)

More specifically, although Credit Consulting asserts on appeal that there was no dispute it "sent its validation of debts notice under 15 U.S.C. § 1692g advising Ms. Paredes it was in the process of collecting her debt and advising to dispute it if it was in error," Meek's declaration provides no detail regarding the validation of debts or Credit Consulting's process for verifying the alleged debt reported by the creditor. To the contrary, it simply states, "On or around October 10, 2017, the underlying debt owed by Ms. Paredes was assigned to [it] for collection by the original creditor, Mai Dental Specialists. [Credit Consulting] made attempts to collect the debt from Ms. Paredes for several months, through means such as sending letters, but was unable to establish contact with her. In May of 2018, Mai Dental Specialists authorized [Credit Consulting] to bring a collection lawsuit on its behalf against Ms. Paredes for the balance owed. [Credit Consulting], through its attorney and on behalf of its client, Mai Dental Specialists, filed the underlying collection action against Ms. Paredes." Thus, although the declaration proffered by Credit Consulting describes in detail the collection notes and efforts undertaken with respect to the filing of the collection complaint and service of summons on Paredes, it affords no meaningful support for its assertion on appeal that Paredes has not shown a probability of prevailing on the merits because she cannot overcome its bona fide error defense.

We therefore conclude that the trial court did not err in deciding that to the extent Credit Consulting sought to rely upon the affirmative defense in support of its anti-SLAPP motion, its showing did not defeat the prima facie case established by Paredes.

30

### III. DISPOSITION

The trial court's order denying Credit Consulting's special motion to strike under Code of Civil Procedure section 425.16 is affirmed. Respondent is entitled to recover her reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
                                 Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H048092**
*Credit Consulting Services v. Parades*

Filed 8/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARITZA PAREDES,<br><br>    Cross-complainant and Respondent,<br><br>v.<br><br>CREDIT CONSULTING SERVICES, INC.,<br><br>    Cross-defendant and Appellant. | H048092<br>(Santa Clara County<br>Super. Ct. No. 18CV328603)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

BY THE COURT:

The opinion in this case, filed August 8, 2022, was not certified for publication. The court has received a request for publication made under California Rules of Court, rule 8.1120(a).  After reviewing the request, it appears the opinion meets the standards for publication under California Rules of Court, rule 8.1105.  The court therefore orders that the opinion be published in the Official Reports.

_____
Danner, J.


_____
Bamattre-Manoukian, Acting P.J.


_____
Wilson, J.

**H048092**
*Credit Consulting Services v. Parades*

| Trial Court: | Santa Clara County Superior Court No. 18CV328603 |
|---|---|
| Trial Judge: | Hon. Sunil R. Kulkarni |
| Counsel for Cross-defendant and Appellant: | Ellis Law Group, LLP<br>Mark E. Ellis |
| Counsel for Cross-complainant and Respondent: | Consumer Law Center, Inc.<br>Fred W. Schwinn<br>Raeon R. Roulston<br>Matthew C. Salmonsen |

**H048092**
*Credit Consulting Services v. Parades*